23692

Don OWENS, individually and as Representative of a Class of Persons Including the Citizens and Taxpayers of Greenville County, Appellants/Respondents v. Arthur MAGILL, Holly Magill and the Arthur and Holly Magill Foundation; Greenville County Museum of Art; William T. Davis Susan S. Douglas, Gail Durham, Michael Mathers, Bernice Barton, Jo Ann Taylor, and Louise McDavid as Commissioners of the Greenville County Museum of Art; Thomas W. Styron as Executive Director of the Greenville County Museum of Art; Greenville County and the Greenville County Council; George Bomar, Richard Ashmore, James Arrowood, Mann Batson, Robert Leach, Paul Wickensimer, Jim Patterson, Dick Herdklotz, Fletcher Smith, Wade Cleveland, E.D. Dixon, and Jim Bennett as Members of the Greenville County Council; Albert I. Edelman as Executor of the Estate of Joseph E. Levine; Rosalie Levine and Richard Levine as Heirs of Joseph E. Levine and Beneficiaries of his Estate; and Seibu, a Japanese conglomerate, Defendants, of whom Arthur Magill, Holly Magill and the Arthur and Holly Magill Foundation and Seibu Pisa, Ltd., a Japanese conglomerate are Respondents/Appellants, and William T. Davis, Susan S. Douglas, Gail Durham, Michael Mathers, Bernice Barton, Jo Ann Taylor, and Louise McDavid as Commissioners of the Greenville County Museum of Art; Thomas W. Styron as Executive Director of the Greenville County Museum of Art; Greenville County and the Greenville County Council; George Bomar, Richard Ashmore, James Arrowood, Mann Batson, Robert Leach, Paul Wickensimer, Jim Patterson, Dick Herdklotz, Fletcher Smith, Wade Cleveland, E.D. Dixon, and Jim Bennett as Members of the Greenville County Council; Albert I. Edelman as Executor of the Estate of Joseph E. Levine; Rosalie Levine and Richard Levine as Heirs of Joseph E. Levine and Beneficiaries of his Estate are Respondents.

(419 S.E. (2d) 786)

Supreme Court

*J. Kendall Few,* Greenville, *for appellants/respondents.*

*James H. Watson* and *O. Doyle Martin,* both of *Leatherwood Walker Todd & Mann,* Greenville, *for respondent/appellant Seibu Pisa, Ltd.*

*Richard J. Storrs* and *Kevin J. Saunders,* both of *Churchill & Ferguson,* Atlanta, *Mason A. Goldsmith* and *Belton O. Thomason, Jr.,* both of *Love, Thornton, Arnold & Thomason,*

Greenville, *for respondents/appellants Arthur Magill, Holly Magill,* and the *Arthur and Holly Magill Foundation.*

*David L. Freeman* and *Carl F. Muller,* both of *Wyche, Burgess, Freeman & Parham,* Greenville, *for respondents.*

Heard June 5, 1992; Decided July 20, 1992.

Reh. Den. Aug. 31, 1992.

HARWELL, Chief Justice:

Appellant Don Owens (Owens) brought this action individually and as a class action seeking a declaratory judgment to determine the rights of the citizens and taxpayers of greenville County to twenty-six (26) original Andrew Wyeth paintings formerly on display at the Greenville County Art Museum. The trial judge granted summary judgment in favor of respondents, finding that Owens did not have standing to assert this claim. We agree and affirm.

## I. FACTS

A brief review of the origin of this action is necessary. In 1979, Arthur Magill purchased the twenty-six Wyeth paintings from Joseph Levine and Joseph E. Levine Presents, Inc. On March 8, 1979, shortly prior to the closing of the purchase, Levine sent Magill a letter containing the following sentence:

> This sale will be made by me on the understanding that the words of art are being acquired by you for donation to the Greenville County Museum of Art, 420 College Street, Greenville, South Carolina where they will be preserved for public exhibition.

This sentence was incorporated by reference into the two bills of sale for the paintings through provisions which read as follow:

> By countersigning this bill of sale the buyer acknowledges delivery to him of the said . . . works of art at Greenville, South Carolina in good condition in compliance with the terms of said letter of March 8, 1979, the other terms of which shall survive the delivery of this document. . . .

After Magill purchased the paintings in 1979, he brought the paintings to Greenville and loaned them to the Museum for public display. The paintings remained on display at the Museum from 1979 until 1990.

In the early 1980's Magill publicly stated several times that he hid not intend to transfer ownership of any of the paintings to the Museum.[1] At this time, the Museum Commission (Commission) considered seeking to enforce its status as third party beneficiary under the agreement between Levine and Magill, but decided not to do so. Instead, during the entire time that the Wyeth paintings were located at the Museum, the Museum displayed them pursuant to a series of written loan agreements. The initial loan agreement, entered into in 1979, provided for the long term loan of the paintings. Beginning in 1983, and continuing through 1990, the loan of the paintings was governed by a series of annual agreements. From 1984 until 1990, the agreements contained a provision stating that the owners reserved the right to reclaim the paintings in the event they decide to sell them.

On June 27, 1990, Magill notified the Museum in writing that he was terminating the current loan agreement and was withdrawing the paintings from the Museum to sell them. The Commission accepted the notice and acknowledged the withdrawal of the paintings.[2] The Commission then filed a report with the Greenville County Council which explained why the Museum felt that it was obligated to recognize the Magills' ownership of the paintings. The Magills sold all twenty-six of the paintings to Seibu Pisa, Ltd., a Japanese corporation.

Owens filed this action claiming that the citizens and taxpayers of Greenville County were the intended third party beneficiaries of the agreement between Levine and Magill.

---

[1] Even after Magill publicly announced that he would not donate the paintings to the Museum, Levine did not take any action to insist upon the donation. In fact, in his affidavit, Magill states that he spoke with Levine after he publicly announced that the paintings would not be donated, and that Levine never stated any concern or raised any issue regarding the donation.

[2] Owens contends that, prior to the sale, representatives of the Museum entered into a "secret agreement" with the Magills under which the Museum purported to renounce its interest in the paintings. However, this allegation is unsupported by the facts. Instead, the record demonstrates that the Museum Director, Thomas Styron, merely signed an agreement acknowledging that the Museum had no claim to the paintings. This agreement was no more than a restatement of the loan agreements.

Owens sought the return of the paintings to the Museum or, in the alternative, the payment to the Museum of all proceeds from the sale of the paintings. The Museum, the Magills, and Seibu Pisa moved for summary judgment on the ground that Owens lacked standing to pursue the action. Owens filed a motion to delay consideration of the motions for summary judgment until discovery was completed. After a hearing, the trial judge issued an order holding that all of the respondents were entitled to summary judgment based on Owens' lack of standing.

## II. DISCUSSION

Owens contends that the trial judge erred in granting summary judgment to respondents on the ground that Owens lacked standing to pursue this action. Owens argues that he has standing to bring this action because "the duly appointed officials of the Museum Commission and the governing body of Greenville County have failed and refused to take appropriate action to protect the interests of the class." We disagree.

The duty of determining when a county board has a cause of action for an injury sustained which should be enforced for the protection of its citizens and taxpayers is vested in the county board and cannot be controlled or exercised by a taxpayer absent evidence that the board has unjustifiably refused to assert the cause of action. *Ex Parte Hart*, 190 S.C. 473, 2 S.E. (2d) 52 (1939); *see also Johnston v. City of Myrtle Beach*, 285 S.C. 453, 330 S.E. (2d) 321 (Ct. App. 1985). In addition, a court will not attempt to control the discretionary powers conferred upon a county board and will not interfere, by means of a taxpayer suit, to restrain the authorities of a county board from the exercise of their discretionary power with regard to the control or disposition of property of the county board in the absence of illegality, fraud, or clear abuse of authority. *See Babb v. Green*, 222 S.C. 534, 73 S.E. (2d) 699 (1952).

The issue of whether Owens has standing to bring this action must be determined by examining the actions of the Commission, the public body charged with exercising its judgment with respect to the Museum's alleged claim to the paintings. Thus, we must review the Commission's actions with regard to the paintings and determine whether the

Commission abused its discretion in refusing to assert a claim against the Magills and in allowing the Magills to retain ownership of the paintings.

The Commission clearly was aware of Levine's letter to Magill and understood that it possibly could claim an interest in the paintings under a third party beneficiary theory. However, in its affidavit, the Commission stated that it chose not to pursue this claim because there were "important considerations which strongly outweighed any thought of pursuing a claim against Arthur and Holly Magill." The Commission further explained its decision to recognize the Magills' ownership of the paintings:

> Our decision to respect the rights of the Magills to the unfettered ownership of the twenty-six Wyeth paintings was motivated by a number of considerations. Among these were the fact that the Museum at that time had already enjoyed the benefit of the collection for more than three years since the paintings had been placed in the Museum in 1979, under standard loan agreements that recognized the Magills as owners. Even more importantly, Arthur and Holly Magill had been and remained by far the largest and most dedicated supporters of the Museum.[3] In our judgment, to have pursued a dubious claim to the twenty-six Wyeth paintings, apart from being an inconceivable affront to their unique generosity, would as a practical matter, have destroyed the relationship under which not just the twenty-six Wyeth paintings were made available to the Museum, but many other paintings, including a group of 230 drawings and preparation sketches which had been purchased from Andrew Wyeth's own collection and had also been placed on loan to the Museum. In the exercise of our discretion, and in the discharge of our responsibilities toward the Museum, it was our judgment that the right and sensible thing to do was to acknowledge and respect the ownership of the

[3] In 1970, the Magills donated $750,000 for the construction of the Museum, which was half the total cost of building the Museum. In addition, the Magills made substantial gifts to enlarge the Museum and to provide space for an art school. As a further example of the Magills' generosity to the Museum, the Magills donated $6 million of the money they received from the sale of the paintings to the Museum.

twenty-six Wyeth paintings in the Magills and their family foundation.

In addition, Philip Warth, former director of the Museum, noted in his affidavit explaining the Museum's decision that:

> . . . the practical interest of the Museum would not be served by challenging the right of ownership to the twenty-six Wyeth paintings. Any such assertion would have certainly jeopardized the future relationship between the Museum and the Magills with respect to the remainder of the highly valuable Wyeth collection and other paintings on loan to the Museum, or for that matter, any further continuing support which the Museum might otherwise have expected.

We find that these affidavits, put into evidence by respondents, demonstrate that the Commission was acting in the best interest of the Museum and the community, and did not abuse its discretion, in choosing not to pursue a claim against the Magills.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. The party seeking summary judgment has the burden of clearly establishing by the record properly before the Court the absence of a triable issue of fact. *Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E. (2d) 460 (1990).

In our opinion, the record supports the conclusion that respondents are entitled to summary judgment. Respondents presented overwhelming evidence, including a number of affidavits and a variety of other documents, which clearly demonstrated that the Commission acted properly in deferring to the Magills' ownership of the paintings. In contrast, Owens presented no evidence to support his claim that the Commission abused its discretion in failing to pursue a claim against the Magills, but instead, merely reasserted the allegations in his pleadings. This is clearly insufficient. Rule 56(e), SCRCP provides that:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See also Humana Hospital-Bayside v. Lightle*, — S.C. —, 407 S.E. (2d) 637 (1991) (affirming the trial court's granting of a motion for summary judgment against a plaintiff who resisted the motion only through unsupported assertion). Thus, we conclude that the trial judge correctly determined that summary judgment was appropriate on the ground that Owens lacks standing to pursue this action.

Owens next contends that summary judgment was inappropriate because the trial judge refused to rule on his motions to compel discovery prior to granting summary judgment. Specifically, Owens asserts that he was not provided all of the discovery sought by him of the Magills, such as the Magills' income tax returns and information regarding insurance on the paintings. The Magills objected to Owens' discovery requests and filed a protective order requesting that discovery be limited to issues relating to standing.

The threshold issue in this case was whether Owens had standing to maintain this action. As noted above, the issue of standing turns on whether the Commission properly exercised its discretion. It is undisputed that the Museum and the Commission's files and witnesses were made available to Owens prior to the summary judgment hearing. The Magills tax return and insurance contracts were not relevant to a de termination of whether the Commission abused its discretion Consequently, we find no abuse of discretion in the trial's judge's refusal to grant Owens a continuance to complete dis covery. *See Beasley v. Kerr-McGee Chemical Corp., Inc.*, 27: S.C. 532, 257 S.E. (2d) 726 (1979) (motion for continuance i within the sound discretion of the trial judge and will not b disturbed absent an abuse of discretion).

Lastly, Owens contends that the trial judge erred by issu ing a written order inconsistent with its oral rulings. Her

the record does not support this assertion. Regardless, this issue can be disposed of under our recent decision in *First Union Nat'l Bank v. Hitman, Inc.*, — S.C. —, 418 S.E. (2d) 545 (1992) (Davis Adv. Sh. No. 14 at 23), in which we held that a judge was not bound by a prior oral ruling and could issue a written order which conflicted with the prior oral ruling.

Because we affirm the order of the trial judge dismissing this case based on Owens' lack of standing, we need not address Seibu's or the Magills' cross appeals, which challenge the trial judge's failure to grant summary judgment on other grounds.

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.