492 S.E.2d 794

Eldon M. BERRY, Freddie D. Johnson, Betty Temple, William Coppage, II, Patsy V. Coppage, Sammie King, A.L. Kirkland, Charles H. Cash, C.A. Armstrong, Jr., Norman Strader, Bryon Turner, Henry Rowland, Lillian S. Hammack, Durand G. Coates, J.D. Southerland, W.E. Crawford, and B. Jack Walker Appellants,

v.

Daniel R. McLEOD, Jr., The McNair Law Firm, John W. Harte, and George Cantelou, Respondents.

No. 2718.

Court of Appeals of South Carolina.

Heard June 5, 1997.

Decided Sept. 22, 1997.

Rehearing Denied Nov. 24, 1997.

436

438

Francis T. Draine, Columbia, for appellants.

Robert B. Wallace and Paul E. Tinkler, both of Wallace and Tinkler, Charleston; Wilburn Brewer, Jr. and Ralph W. Barbier, both of Nexsen, Pruet, Jacobs & Pollard, and Frederick A. Gertz, of Gertz & Moore, Columbia, for respondents.

PER CURIAM.

The appellants are residents of the Town of New Ellenton, South Carolina (Residents). They brought this action for legal malpractice and civil conspiracy against the town's former corporate counsel, John W. Harte (Harte); bond counsel, Daniel R. McLeod and The McNair Law Firm (bond counsel) (collectively referred to as "Attorneys"); and a developer, George Cantelou (Cantelou). Cantelou was dismissed from the suit in a ruling which Residents do not now contest. Residents allege Attorneys committed legal malpractice in their handling of a New Ellenton revenue bond issued to fund construction of a sewer system, conspiring with Cantelou to benefit his private development. Attorneys filed motions to dismiss under Rule 12(b)(6) and moved in the alternative for summary judgment on the grounds that the court lacked subject matter jurisdiction, the complaint failed to state facts sufficient to constitute a cause of action, and the statutes of limitation had expired. The trial judge granted the motions, concluding the amended complaint failed to allege facts sufficient to state a claim for individual recovery; the plaintiffs lacked standing; and their claims were barred by both the general and the bond statutes of limitation. We affirm.

## I. FACTS

This action arises following the issuance of a revenue bond in the amount of $5,002,500 to finance the construction and installation of a sewer system in New Ellenton, South Carolina. The bond was issued in accordance with an ordinance adopted by the town council and was signed by the mayor on June 25, 1990. The bond was then filed with the clerk of court in Aiken County on June 28, 1990 as required by S.C.Code Ann. § 11–15–10 (1986). No action was brought to contest the

bond within twenty days of this filing, and Residents concede the bond was incontestable when this suit was brought.

Residents allege Attorneys misrepresented a large septic system as an existing sewer system, which allowed the town to pass the bond ordinance without holding a referendum. Residents also allege Attorneys misrepresented the true financial ramifications of the bond, misleading town council and Residents about its economic viability and by assuring them connection to the system would be optional. They did this, according to Residents, by conspiring with Cantelou and the mayor, so Cantelou could publicly fund a sewer system to benefit his private development.

Residents claim damage in the form of excessive, mandatory tap-in and user fees and depreciation to their property resulting from the bond indebtedness and obligations. They also claim damage from the loss of their right to vote on the issue. Additionally, they argue standing to bring this suit on behalf of the town, which they allege has been damaged by the bond obligations.

The trial court concluded the claims should be dismissed because they were barred by the expiration of the statutes of limitation and Residents had no standing to bring them. We agree.

## II. *SCOPE OF REVIEW*

A Rule 12(b)(6) motion to dismiss for failure to state a cause of action must be resolved by the trial judge based solely on the allegations established in the complaint. *See Woodell v. Marion Sch. Dist. One,* 307 S.C. 297, 414 S.E.2d 794 (Ct.App.1992). The motion cannot be granted if the facts set forth in the complaint and the inferences reasonably drawn therefrom would entitle the plaintiff to any relief on any theory of the case. *Brown v. Leverette,* 291 S.C. 364, 353 S.E.2d 697 (1987).

The trial court decided the motion based not only upon the pleadings, but also after considering the bond ordinance. By doing so, the court converted the motion to dismiss into a summary judgment motion pursuant to Rule 56, SCRCP. *See McDonnell v. Consol. Sch. Dist. of Aiken,* 315 S.C. 487, 445

S.E.2d 638 (1994). There is no appeal from this ruling, and thus, it becomes the law of the case. *Resolution Trust Corp. v. Eagle Lake and Golf Condominiums*, 310 S.C. 473, 427 S.E.2d 646 (1993).

Summary judgment is proper when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP. "Summary judgment should be granted when plain, palpable, and undisputable facts exist on which reasonable minds cannot differ." *Byerly v. Connor*, 307 S.C. 441, 445, 415 S.E.2d 796, 799 (1992). In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Koester v. Carolina Rental Ctr.*, 313 S.C. 490, 443 S.E.2d 392 (1994).

## III. *DISCUSSION*

### A. *Twenty day statute of limitations*

Residents contend the trial court erred in finding the twenty day statute of limitations under S.C.Code Ann. § 11–15–30 applicable. S.C.Code Ann. § 11–15–10 (1986) provides:

> In case any county, township, school district, city, town or other municipality is authorized to issue bonds in pursuance of law, the persons and officers charged therewith shall make a full record of the proceedings connected with such bond issue, and a copy of the record of such proceedings shall be filed and indexed in the office of the clerk of court of the county in a special book to be furnished therefor.

*Id.*

S.C.Code Ann. § 11–15–30 (1986) provides:

> No action shall be commenced on account of the issuance of any such bonds after the expiration of twenty days from the date of the filing and indexing of such records as prescribed by §§ 11–15–10 and 11–15–20, and such bonds so issued, when in the hands of a bona fide purchaser for value, shall be incontestable, but the period within which such

actions may be commenced shall not begin to run until such records have been filed as herein prescribed.

*Id.*

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Horn v. Davis Electrical Constructors, Inc.,* 307 S.C. 559, 416 S.E.2d 634 (1992). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand a statute's operation. *First Baptist Church of Mauldin v. City of Mauldin,* 308 S.C. 226, 417 S.E.2d 592 (1992). Therefore, if an action is "commenced on account of the issuance" of a bond within the meaning of S.C.Code Ann. § 11–15–30, the action must be commenced within twenty days of the date that the documents related to the bond were filed pursuant to S.C.Code Ann. § 11–15–10.

The issuance of the bond was documented by the town and filed in the clerk of court's office in Aiken County on June 28, 1990. The bond records were then properly indexed in miscellaneous civil book 7, file number 12, 101. The requirements of public notification established in S.C.Code Ann. § 11–15–10 were met. The proper filing and indexing of the record of bond documents on June 28, 1990 started the twenty day contestability period under Section 11–15–30, which ended without any contest on July 18, 1990.

This suit was not filed until July 7, 1995 and is undeniably outside of the twenty day contestability period. Therefore, to the extent these causes of action are "commenced on account of the issuance of a bond," this suit is barred. Residents do not contest, in fact they acknowledge, the incontestability of the bonds. They argue they and/or the town have suffered damage because of the bond obligations and the economic burden placed on them now that it is incontestable.

In *Morgan v. Feagin,* 230 S.C. 315, 95 S.E.2d 621 (1956), our supreme court addressed the statute of limitations which required actions to contest the validity of a county school bond to be brought within thirty days. The supreme court stated:

Similar short statutes of limitation, applicable to actions which question the proceedings upon the issuance of municipal and other bonds have been of force in this State for

many years, apparently without challenge heretofore. Code of 1952, Sec. 1–645, twenty days [1]; Sec. 21–976, thirty days; and Sec. 47–842, thirty days. The practical necessity of them is obvious. Purchasers of bonds could hardly be found if the bonds were subject in their hands to attack for alleged illegality in the proceedings upon the issuance of them. Furthermore, it is within common knowledge that sales of bonds are frequently timed to take advantage of a favorable market, which might well be hindered by long delay.

*Id.* at 317, 95 S.E.2d at 622.

Under the wording of S.C.Code Ann. § 11–15–30 and *Morgan,* the time to contest the legality of the proceedings for the issuance of the bond expired after twenty days. We conclude, as did the trial court, Residents are now barred from attacking the legality of the bond proceedings, which includes attacking the underlying factual basis for the bond or the procedure employed for its passage. This ruling is consistent with the policy considerations surrounding short statutes of limitation involving bonds, as set forth in *Morgan.*

We do not address Residents' argument that the allegations of fraud or collusion toll the short contestability period because they failed to present this argument to the trial judge. *See Morgan v. Feagin,* 230 S.C. at 318, 95 S.E.2d at 623. Therefore, it is not preserved for our review. *See Hendrix v. Eastern Distribution, Inc.,* 320 S.C. 218, 464 S.E.2d 112 (1995).

## B.  *Three year statute of limitations*

To the extent Residents' claim for damages may be considered separate from an action "on account of the issuance of" the bond and therefore not controlled by the twenty day statute of limitations, the action is still barred by the three year statute of limitations applicable to actions of this type.

■  South Carolina Code Ann. § 15–3–530 (Supp.1996) provides a three year statute of limitations for legal malpractice actions. Section 15–3–535 provides actions arising or accruing on or after to April 5, 1988 which are initiated under § 15–3–530(5), must be commenced within three years after the

---

1. This statute is the predecessor to S.C.Code Ann. § 11–15–30 (1986).

person knew or by the exercise of reasonable diligence should have known that he had a cause of action. S.C.Code Ann § 15–3–535 (Supp.1996). In *Mitchell v. Holler*, 311 S.C. 406, 429 S.E.2d 793 (1993), our supreme court stated:

> The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. The statute of limitations begins to run from this point and not when advice of counsel is sought or a full blown theory of recovery developed.

*Id.* at 409, 429 S.E.2d at 795 (quoting *Snell v. Columbia Gun Exch., Inc.*, 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981)).

The test of whether a person should have known the operative facts is objective, rather than subjective. *See Burgess v. American Cancer Soc.*, 300 S.C. 182, 386 S.E.2d 798 (Ct.App.1989). "Specifically, the discovery rule focuses upon whether the complaining party acquired knowledge of any existing facts 'sufficient to put said party on inquiry, which, if developed, will disclose the alleged fraud.'" *Id.* at 186, 386 S.E.2d at 800 (quoting *Walter J. Klein Co. v. Kneece*, 239 S.C. 478, 484, 123 S.E.2d 870, 874 (1962)). An individual on inquiry or constructive notice is held to be on notice of the contents of documents filed in conformity with applicable statutory law, which an inquiry would have revealed. *See Fuller–Ahrens v. South Carolina Dept. of Highways and Pub. Transp.*, 311 S.C. 177, 427 S.E.2d 920 (Ct.App.1993). The statute of limitations begins to run at the time the individual has inquiry or constructive notice. *Id.*

The trial judge determined the statute of limitations began to run, at the latest, when the bond documents were publicly filed with the clerk of court in Aiken county on June 28, 1990. He concluded Residents had inquiry or constructive notice at the time of public disclosure by the filing of the true terms of the bond and any possible cause of action began to run at that time. Accordingly, he concluded the three year statute of limitations expired before Residents filed suit in July 1995. We agree.

Residents claim their damages flow essentially from two things: the manner or procedure followed for passage of the bond by which they lost their right to vote in a referendum and monetary harm caused by the economic burden. Both the manner of approving the bond and the financial requirements, including the tap-in and user fees, are set forth in the bond documents filed with the clerk. There is no allegation that passage of the bond ordinance occurred other than in the normal course of a public meeting by the town council. Thus, even if these allegations can be construed as not arising "on account of the issuance of" the bond, the statute of limitations began to run on June 28, 1990.

Residents have attempted on appeal to argue on behalf of the town that the statute as to Harte could not have run where, as here, there was continuous representation by the attorney and the client (town) was persuaded to follow the fiduciary's advice. They assert that in this circumstance the statute of limitations is tolled until the attorney ceases to represent the client. Assuming, *arguendo*, Residents had standing to assert this argument, they did not present it to the trial judge. Therefore, it is not preserved for our review. *See Hendrix v. Eastern Distribution, Inc.*, 320 S.C. at 219, 464 S.E.2d at 113.

## C. *Standing to sue*

The trial court next determined Residents lacked standing to maintain this action in a derivative capacity on behalf of the town or as representatives of a class of New Ellenton citizens. The trial judge was uncertain from the amended complaint and supplemental filing whether the plaintiffs were attempting to bring this suit on behalf of New Ellenton or as a representative of a class of New Ellenton citizens, but concluded Residents cannot maintain this lawsuit in either capacity.[2] We agree with this ruling and also

---

2. We agree with the trial court's analysis concerning the derivative suit, but we do not agree with the trial judge's reasoning as to the class action aspect of the case. The trial court found Residents failed to plead the necessary facts for a class action. However, the initial analysis concerns standing, and an individual or group must have standing to proceed in either a derivative or class action suit. *See Owens v. Magill*, 308 S.C. 556, 419 S.E.2d 786 (1992). We find

conclude it necessary to address both asserted capacities for bringing the suit.

The authority to decide when a claim should or should not be brought by a governmental entity is vested with the entity. *See Ex parte Hart,* 190 S.C. 473, 2 S.E.2d 52 (1939); *see also Johnston v. City of Myrtle Beach,* 285 S.C. 453, 330 S.E.2d 321 (Ct.App.1985). Moreover, this power cannot normally be controlled or exercised by a taxpayer to bring an action on behalf of a town, unless it is clear the governmental entity has unjustifiably refused to assert the claim. *Ex parte Hart,* 190 S.C. at 477, 2 S.E.2d at 53; *Owens v. Magill,* 308 S.C. at 560, 419 S.E.2d at 789 (finding the Museum Commission did not abuse its discretion in deciding not to pursue a claim meant the plaintiffs lacked standing to bring a derivative or class action suit). "A court will not attempt to control the discretionary powers conferred upon a [governmental entity] and will not interfere, by means of a taxpayer suit, to restrain the authorities of a [governmental entity] from the exercise of their discretionary power with regard to the control or disposition of property of the [governmental entity] in the absence of illegality, fraud, or clear abuse of authority." *Id.* at 560, 419 S.E.2d at 789 (quoting *Babb v. Green,* 222 S.C. 534, 543, 73 S.E.2d 699, 703 (1952)).

Generally, a private citizen cannot test the validity of executive or legislative action unless he or she has sustained or will sustain prejudice not common to the public from such action. *Florence Morning News v. Building Comm'n,* 265 S.C. 389, 218 S.E.2d 881 (1975). The discretionary power is vested in the governmental entity of determining when a suit shall be brought, but that means legal discretion. *Ex parte Hart,* 190 S.C. at 479, 2 S.E.2d at 54. "Where it clearly appears that power is abused, the governing body places itself outside the protection of the rule stated, and may be compelled to act, or in some instances further remedies may be resorted to." *Id.* at 479, 2 S.E.2d at 54. The court in *Hart* also states:

If a county or other corporation has a *plain* cause of action for an injury done to it, that should be enforced for the

---

Residents did not have standing to bring a derivative or class action suit, and therefore will not address the merits of the class action suit.

protection of its members, and its governing body refuses to perform its *plain* duty in the premises, our system of jurisprudence is by no means so weak that justice can thereby be defeated. On the contrary, any member of the corporation, by reason of his indirect interest therein, suing in behalf of himself and all similarly situated, may set judicial proceedings in motion, making the corporation a defendant, as trustee for all of its members, and thereby enforce the rights of the corporation.

*Id.* at 479, 2 S.E.2d at 54 (emphasis added) (quoting *Land, Log & Lumber Co. v. McIntyre*, 100 Wis. 245, 75 N.W. 964 (1898)).

■ The authority to bring suit on behalf of the town is vested with the town council of New Ellenton. The trial court concluded the pleadings failed to allege any factual basis for the assertion that the present council and mayor abused their discretion in deciding not to initiate this litigation. We agree. Although the amended complaint asserts that the mayor and council were asked by Residents to bring this suit and they refused, there is no factual assertion of an underlying claim which is plain and clearly merited prosecution by the town.

In *Ex parte Hart*, the governmental entity refused to attack an order rendered in a case to which it was not a party, requiring it to pay attorney fees. *Ex parte Hart*, 190 S.C. at 473, 2 S.E.2d at 52. The court found this to be unreasonable inaction on a claim which had plainly appearing merit. Unlike the claim in *Ex parte Hart*, the claim alleged by Residents on behalf of the town is not clearly set forth and is far from plain. First, the bond documents contain the obligations. Thus, the town council could not claim it was misled by them. Second, neither the loss of the right to vote in a referendum nor the underlying economic obligations of the revenue bond implicates a proprietary interest or statutory right of the town, as opposed to the individual citizens. *See Glaze v. Grooms*, 324 S.C. 249, 478 S.E.2d 841 (1996) (finding a municipality must allege an infringement of its proprietary interests or statutory rights to establish standing). Third, the misrepresentations which are alleged as the basis for both causes of action involved the then mayor, acting in his capacity as an official for the town.

■ The trial court also found the amended complaint failed to state a claim for damages on behalf of the town. The plaintiffs alleged declining property values and mandatory tap and user fees as damages. The trial court determined these are damages incurred by the individuals and not the town. The plaintiffs alleged they had been denied their right to vote in a referendum on the bond, but this is also a right personal to the individuals, not of the town. The plaintiffs contend the town is wrongfully obligated to repay the bond, but the bond ordinance states the "obligation for the payment of money incurred by the Town shall not create a pecuniary liability of the Town or a charge upon its general credit or taxing power...." The ordinance also states the bond is a sewer system revenue bond to be paid "solely from the Revenues" created by the sewer system, which are required to be set apart and pledged toward the repayment of the bond. Thus, we agree with the trial court's conclusion.[3]

■ Likewise, the claims fail as claims of individual injury or as a class action claim because there is no claim of injury or damage not common to the public. *Florence Morning News v. Building Comm'n,* 265 S.C. at 398, 218 S.E.2d at 885.

### D. *Leave to amend complaint*

Finally, Residents argue the trial court erred in dismissing the complaint without leave to amend. They assert the trial judge abused his discretion especially because it was a motion to dismiss under Rule 12(b)(6), SCRCP. However, we note the respondents filed a Rule 12(b)(6) motion or in the alternative a summary judgment motion, and the trial judge dismissed the complaint based upon his review of matters outside of the pleadings. Therefore, the motion to dismiss was converted into a summary judgment motion.

■ Under Rule 15(a) and (b), SCRCP, the court has the power to amend pleadings beyond the time allowed for an

---

**3.** Although Residents argued on appeal that the suit seeks to recover attorney fees the town incurred in litigation with the bond custodian and Cantelou, there is no allegation to support this claim in the amended complaint. Residents also failed to present this argument the trial court. Therefore, we decline to address it. *See Hendrix v. Eastern Distribution, Inc.,* 320 S.C. at 219, 464 S.E.2d at 113.

amendment when to do so does not prejudice another party. Courts have wide latitude in amending pleadings. *Porter Bros., Inc. v. Specialty Welding, Co.* 286 S.C. 39, 331 S.E.2d 783 (Ct.App.1985). While this power should not be used indiscriminately or to prejudice or surprise another party, the decision to allow an amendment is within the sound discretion of the trial court and will rarely be disturbed on appeal. *Id.* The trial judge's finding will not be overturned without an abuse of discretion or unless manifest injustice has occurred. *Anders v. Nash,* 256 S.C. 102, 180 S.E.2d 878 (1971); *Mylin v. Allen–White Pontiac, Inc.,* 281 S.C. 174, 314 S.E.2d 354 (Ct. App.1984). We find the trial judge did not abuse his discretion in refusing to allow the Residents leave to amend their complaint a third time.[4]

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

HEARN, STILWELL, and HOWARD, JJ., concur.

---

4. The court considered the motion in relation to an amended complaint, but allowed Residents to file a memorandum explaining their legal position on damages and standing, which the court stated it would consider as a part of the complaint. Thus, the court did allow amendment before rendering a decision, and any subsequent amendment would have been a fourth version.