571 S.E.2d 92

James R. CORBIN, Claimant, Respondent,

v.

KOHLER COMPANY, Self–Insured Employer, Appellant.

No. 3554.

Court of Appeals of South Carolina.

Heard Sept. 12, 2002.
Decided Oct. 7, 2002.

614

Mary Lou Hill, of Greenville, for Appellant.

J. Mark Hayes, II, of Spartanburg, for Respondent.

## ANDERSON, J.

Kohler Company appeals the decision of the Circuit Court affirming an award of Workers' Compensation. Kohler argues: (1) the Circuit Court did not apply the correct standard of review; (2) the record does not support the Circuit Court's decision; and (3) the Circuit Court erred in finding Kohler was not entitled to set off for payments it made to Corbin under a salary continuation plan. We affirm.

## FACTS/PROCEDURAL BACKGROUND

James R. Corbin (Corbin) worked in the casting department at Kohler Company in Spartanburg for forty-one years. Corbin testified that, during his career at Kohler, he was exposed to significant amounts of silica dust. In 1999, he first began having respiratory symptoms, including a dry cough which progressed to some shortness of breath and loss of stamina. Corbin's family physician referred him to Dr. Douglas Clark, a pulmonary specialist. Additionally, he was seen by Dr. Mary Lou Applebaum, a pulmonary specialist in the same office as Dr. Clark. In August 1999, Dr. Applebaum removed Corbin from work and advised him he had silicosis.

Corbin filed a Form 50 seeking Workers' Compensation benefits for the silicosis. Kohler denied the compensability of his claim.

Corbin was evaluated by several doctors in connection with his illness, in addition to Drs. Applebaum and Clark. Dr. William Stewart reviewed Corbin's medical records and other factors to provide a vocational and rehabilitation assessment. Dr. Donald Schlueter examined the records of Dr. Applebaum and her partners. Drs. Kevin Kopera and Arden Levy also evaluated Corbin.

In his order, the Single Commissioner found that Corbin sustained an occupational disease arising out of and in the course of his employment at Kohler. He found Corbin's occupational disease was silicosis resulting from prolonged exposure to silica dust in the workplace and Corbin was permanently and totally disabled as a result of his occupational disease. The Commissioner denied Kohler credit for benefits paid to Corbin under his salary continuation program, and ordered the payment of 500 weeks compensation in addition to reimbursement and coverage of all medical, hospital, pharmaceutical, and other expenses related to Corbin's occupational disease. Kohler appealed the order to the full Workers' Compensation Commission.

The Commission upheld the Single Commissioner's decision in its entirety. Kohler appealed. The Circuit Court affirmed the findings of the Commission and dismissed the appeal.

### ISSUES

I. Did the Circuit Court apply the correct standard of review in upholding the decision of the Commission?

II. Does the record support the Circuit Court's finding that the Commission's decision was supported by substantial evidence in the record as a whole?

III. Did the Circuit Court err in finding that Kohler was not entitled to a set off from the Commission's award to Corbin for compensation paid under the salary continuation plan?

### STANDARD OF REVIEW

The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the Workers' Compensation Commission. *Gibson v. Spartanburg School Dist. No. 3,* 338 S.C. 510, 526 S.E.2d 725 (Ct.App.2000); *Hamilton v. Bob Bennett Ford,* 336 S.C. 72, 518 S.E.2d 599 (Ct.App.1999). In an appeal from the Commission, this Court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Hamilton,* 336 S.C. at 76, 518 S.E.2d at 601. The appellate court's review is limited to deciding whether the Commission's decision is unsupported by substantial evidence or is controlled by some error of law. *Id.* The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Hicks v. Piedmont Cold Storage,* 335 S.C. 46, 515 S.E.2d 532 (1999); *Broughton v. South of the Border,* 336 S.C. 488, 520 S.E.2d 634 (Ct.App. 1999). It is not within our province to reverse findings of the Commission which are supported by substantial evidence. *Hunter v. Patrick Constr. Co.,* 289 S.C. 46, 344 S.E.2d 613 (1986); *Broughton,* 336 S.C. at 496, 520 S.E.2d at 637.

Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Miller v. State Roofing Co.,* 312 S.C. 452, 441 S.E.2d 323 (1994); *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 519 S.E.2d 583

(Ct.App.1999). "Indeed, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Muir*, 336 S.C. at 282, 519 S.E.2d at 591.

## *LAW/ANALYSIS*

### I. Standard of Review

■ Kohler contends the Circuit Court failed to apply the correct standard of judicial review in upholding the decision of the Commission. We disagree.

At the hearing before the Circuit Court, the following colloquy occurred:

THE COURT: All right. I'm looking at Page 12 of the order. And it alleged—I mean, it's based on claimant's functional limitations and report of Dr. William Stewart, it is clear that claimant is and will be permanently and totally disabled. Where can I find Dr. Stewart's—this is it right here. William Stewart?

MS. HILL: Yes. Dr. Stewart talks about disability. But Dr. Stewart does not connect the disability to silicosis. And the finding on functional limitation, there is no functional limitation other than he's got to stay out of dust.

THE COURT: Well, both of you are aware I've got to see if there is any evidence, basically.

MS. HILL: I understand, Your Honor.

. . .

THE COURT: [Dr. Stewart] says he concluded his prognosis was successful vocational rehabilitation to some kind of lighter work job be considered very poor to nonexistent. If we were to assume he could, in fact, return to some kind of alternative work, he has concluded—and then he goes into that he could only earn $7.50 an hour. Is that not enough evidence for the coupled with what they call functional limitations? Isn't that some evidence on which they could base their opinion?

MS. HILL: This is evidence by a vocational expert that, in his opinion, he is going to have a hard time finding a job with his limitation of not being able to work in dust, strong

fumes, or odors. But nowhere in here does he say that his disability is caused by the occupational disease of silicosis. And that's my point. There is no evidence on the causal connection between this man's impairment, even if he has some, even if he has silicosis, and his disability.

THE COURT: Well, I thought Dr. Applebaum said he did have silicosis.

MS. HILL: He—yes, she certainly did.

THE COURT: Well, isn't that enough? You don't have to have 15 doctors. Once the Workers Comp. Commission has any evidence that he had silicosis—and Dr. Applebaum says he does—isn't that—doesn't that jump the hurdle?

MS. HILL: She said he had silicosis. She put no functional limitations on him other than he can't work where it's real dusty.

THE COURT: Well, let's take it one step at the time. Doesn't that get him over the first hurdle, though? Doesn't that put him—having silicosis?

MS. HILL: Yes.

THE COURT: And doesn't that also put it as a result of inhaling silica while employed at Kohler Company, as she states in so many word[s]?

MS. HILL: Yes, but she never states that it resulted in a disability that prevented him from working.

THE COURT: I understand that. I'm just taking it one step at a time.

MS. HILL: Okay.

THE COURT: So she says he's got silicosis and that he has residual pulmonary condition.

MS. HILL: That's right. But she also states, in an earlier report, that his pulmonary functioning was normal. He just can't work where it's dusty.

THE COURT: Well, so, she said two different things. That goes to weight; does it not? Why should I believe the first one and not the second? And—instead of the Commission believing one as opposed to the other? When you got somebody saying two things, you can either believe the first, second, or somewhere in between.

MS. HILL: Well, when she says residual . . .

THE COURT: ... pulmonary.

MS. HILL: All right. I—I'm ...

THE COURT: Let's see. In my opinion, within a reasonable degree of certainty, he has a silicosis, condition as a result of exposure. It is my opinion, within a reasonable degree of medical certainty, that Mr. Corbin suffers from a significant pulmonary condition, referred to as silicosis. That's what she says he's got. And that's what she says, to a reasonable degree of medical certainty, creates a significant pulmonary condition. She said that, not Dr. Applebaum. I don't know whether it's true or not. But I can't weigh the evidence; I've got to see if there is any. To me the question becomes whether or not he has silicosis and he got it at Kohler Company. So the question becomes, whether or not, based on that and Dr. Stewart's report, that is—jumps the hurdle of some evidence. And I'm going to find that it does. I'm going to dismiss the appeal.

...

THE COURT: As I see it, I've got a very little narrow thing I can look at. And once that little hurdle is jumped, I can't say, Well, I'd have found different, or anything like that. Once they get the door open just a crack, that's all it takes. That may be all that's here but that's all it takes.

Kohler asserts the trial judge's statements reflect his misunderstanding of the standard of review. Kohler maintains the Circuit Court reviewed the Commission's decision based on a "cracked door" standard of review in which a mere scintilla of evidence would be sufficient to sustain the decision of the Commission. This argument has no merit because the statements by the judge were merely contemporaneous colloquy. The judge and the lawyers were talking in the course of working through the attorneys' arguments. The judge's final written order represents the decision of the court.

 "No order is final until it is written and entered." *First Union Nat'l Bank v. Hitman, Inc.*, 306 S.C. 327, 329, 411 S.E.2d 681, 682 (Ct.App.1991), *aff'd*, 308 S.C. 421, 418 S.E.2d 545 (1992) (citing Rule 58(a), SCRCP). *See also Case v. Case*, 243 S.C. 447, 134 S.E.2d 394 (1964) (judgments in general are not final until written and entered); *Bayne v. Bass*, 302 S.C. 208, 394 S.E.2d 726 (Ct.App.1990) (divorce

decree is not final until written and recorded). "Until written and entered, the trial judge retains discretion to change his mind and amend his oral ruling accordingly." *Ford v. State Ethics Comm'n*, 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001); *First Union Nat'l Bank*, 306 S.C. at 329, 411 S.E.2d at 682. *See also Case v. Case*, 243 S.C. at 451, 134 S.E.2d at 396 (holding even if the trial judge made oral ruling in favor of one party, such pronouncement is not a final ruling on the merits nor is it binding on the parties until it has been reduced to writing, signed by the judge, and delivered for recordation).

■■■ "It is well settled that a judge is not bound by a prior oral ruling and may issue a written order which is in conflict with the oral ruling." *Badeaux v. Davis*, 337 S.C. 195, 204, 522 S.E.2d 835, 839 (Ct.App.1999). *See also Owens v. Magill*, 308 S.C. 556, 419 S.E.2d 786 (1992) (ruling judge was not bound by prior oral ruling and could issue written order which conflicted with prior oral ruling). "To the extent the written order may conflict with the prior oral ruling, the written order controls." *Parag v. Baby Boy Lovin*, 333 S.C. 221, 226, 508 S.E.2d 590, 592 (Ct.App.1998). "The written order is the trial judge's final order and as such constitutes the final judgment of the court. The final written order contains the binding instructions which are to be followed by the parties." *Ford*, 344 S.C. at 646, 545 S.E.2d at 823 (citing Rule 58, SCRCP).

The judge's final order reads:

The South Carolina Administrative Procedures Act, S.C.Code Ann. Section 1–23–310, et. seq., establishes the "substantial evidence" rule as the standard for judicial review of a decision of an administrative agency. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). On an appeal from the Workers' Compensation Commission, the court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Stephen v. Avins Construction Company*, 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). Also see *Lyles v. Quantum Chemical Company*, 315 S.C. 440, 434 S.E.2d 292 (Ct.App.1993).

This paragraph accurately states the "substantial evidence" standard of review which the judge applied in his final written order. Regardless of the colloquy during the hearing, the final written order correctly articulated the "substantial evidence" standard. Thus, we find no error.

## II. Substantial Evidence to Support the Decision of the Commission

 Kohler argues the record does not support a finding that the Commission's decision was supported by the substantial evidence in the record as a whole. We disagree.

Beginning in April 1999, Corbin was seen by Dr. Applebaum. By August of 1999, Dr. Applebaum had removed Corbin from work and diagnosed him with silicosis. Corbin continued in her care through March 2000, when Dr. Applebaum found he had reached "maximum medical improvement." Dr. Applebaum's memorandum dated March 17, 2000 provided:

Please be advised that the undersigned is the treating physician for James R. Corbin. A complete copy of my medical records concerning Mr. Corbin is attached.

Based on the history presented, my examination, and x-ray and other diagnostic evaluations, it is my opinion within a reasonable degree of medical certainty that Mr. Corbin suffers from a significant pulmonary condition referred to as silicosis. Based on my examination, treatment records, x-ray and diagnostic evaluations, the history presented, and my review of certain Industrial Hygiene Sampling Results, it is my opinion within a reasonable degree of medical certainty that Mr. Corbin's silicosis condition was most probably the result of exposure to respirable silica (Crystalline Quartz) while employed at the Kohler Company, in Spartanburg, South Carolina.

I have been treating Mr. Corbin since April of 1999. I have continued to treat him since August 30, 1999 when I advised that he should leave his work environment at Kohler. It is my opinion that he has now reached maximum medical improvement concerning his condition. However, it is further my opinion that it is medically necessary that he avoid any further exposure to respirable silica dust in any fashion. It is further my opinion that due to his residual pulmonary condition, he will be unable to work in any environment that

would result in pulmonary exposure to dust, strong fumes or odors, or extreme hot or cold temperatures.

Dr. William W. Stewart, a vocational rehabilitation specialist, evaluated Corbin. He did not meet with Corbin personally, but he reviewed the records of Dr. Applebaum and Dr. Douglas Clark. He analyzed vocational and occupational factors, labor market access, Corbin's ability to earn, and his earning capacity. His vocational and rehabilitation assessment stated in pertinent part:

IMPRESSIONS AND CONCLUSIONS

Based on Mr. Corbin's evaluation it is concluded that he is a person who sustained significant work-related injury, or injuries, to his lungs, with continuing problems and limitations, and work restrictions that will prevent him from ever being able to return to the kind of work he had normally performed in the past. And, after considering all vocational/occupational factors relating to Mr. Corbin, including his advanced/retirement age, and all medical/pulmonary factors, including his inability to return to the kind of work he had normally performed over the past 41 years, it is concluded that his prognosis for successful vocational rehabilitation to some kind of lighter, alternative worker job has to be considered very poor to non-existent.

If it were assumed that he could, in fact, return to some kind of alternative work, it is concluded that Mr. Corbin's ability to earn has been reduced to no more than approximately $7.50 per hour because of his injuries, continuing problems and limitations, and his permanent work restrictions.

Corbin testified there was silica dust at Kohler. He provided a photo which showed dust accumulation in his office. He declared his "health has been excellent before this last illness." He stated that, after having trouble breathing, his family doctor referred him to "a set of pulmonary doctors." Corbin explained that he saw Dr. Applebaum and did not return to work after she diagnosed him with silicosis.

In addition to the materials and testimony of Dr. Applebaum, Dr. Stewart, and Corbin, other evidence was presented relating to Corbin's illness. Dr. Arden Levy, of Foothill Allergy and Asthma Associates, saw Corbin on one occasion.

In his report, Dr. Levy diagnosed Corbin with possible bronchial asthma and rhinosinusitis, which may have contributed to his cough. Dr. Donald Schlueter did not see Corbin but reviewed some of the records of Dr. Applebaum and her partners. Dr. Schlueter expressed his opinion "to a reasonable degree of medical certainty that Mr. Corbin's asthma was not caused by any occupational exposure at Kohler Company." Dr. Kevin Kopera declared that he did not believe Corbin had silicosis, though he conceded on cross-examination he could not exclude silicosis as a diagnosis. Dr. Kopera was not a pulmonologist.

Expert medical testimony is designed to aid the Commission in coming to the correct conclusion. *Tiller v. National Health Care Ctr.*, 334 S.C. 333, 513 S.E.2d 843 (1999). Therefore, the Commission determines the weight and credit to be given to the expert testimony. *Id.* Once admitted, expert testimony is to be considered just like any other testimony. *Id.; Smith v. Southern Builders*, 202 S.C. 88, 24 S.E.2d 109 (1943).

Dr. Applebaum saw Corbin more than any other doctor. She is a pulmonologist who specializes in the very type of condition Corbin sustained in his workplace. Dr. Schlueter never examined Corbin personally but instead reviewed the records of other doctors. Dr. Kopera performed an evaluation, but he is not a pulmonologist. Dr. Levy saw Corbin only one time. The evidence provided by Dr. Applebaum was entitled to greater weight than that of the other expert medical testimony, as she saw Corbin more and was a specialist in pulmonology.

In our opinion, substantial evidence supports the Commission's finding that Corbin suffered from silicosis arising out of and in the course of his employment at Kohler. This evidence includes the letters of Drs. Applebaum and Stewart, as well as Corbin's own testimony. Because there was substantial evidence in the record to support the decision of the Commission, there was no error by the Circuit Court in affirming the Commission's order.

### III. Set Off of Award

Kohler claims the Circuit Court erred in finding it was not entitled to a set off from the Commission's award for

compensation paid to Corbin under his salary continuation plan. We disagree.

Under the salary continuation plan, beginning in August 1999, Kohler paid 100% of Corbin's base salary for the first three months of his disability and 80% for the following three months, thus compensating Corbin for a total of 26 weeks. Kohler's pay protection program brochure states: "[y]ou're eligible to participate in the Pay Protection Program if you're an active full-time exempt associate." Kohler paid the cost of each employee's pay protection program. In the materials relating to the program, there was no mention of Workers' Compensation. Significantly, there was a section explaining "when benefits are not paid," and Workers' Compensation is not mentioned in connection with this list.

South Carolina Code Ann. section 42–9–210 provides:

> Any payments made by an employer to an injured employee during the period of his disability, or to his dependents, which by the terms of this Title were not due and payable when made may, subject to the approval of the Commission, be deducted from the amount to be paid as compensation; provided, that in the case of disability such deductions shall be made by shortening the period during which compensation must be paid and not by reducing the amount of the weekly payment.

S.C.Code Ann. § 42–9–210 (1985).

"The approval of the Commission for such deduction is required by § 42–9–210." *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 298, 519 S.E.2d 583, 599 (Ct.App.1999). "In order for payments to be deductible, they must have been made with reference to liability under the provisions of the Act and intended to be in lieu of compensation." *Id.* "Since only those payments are deductible which are made in contemplation of the legal obligation of the employer to pay compensation to a disabled employee, the intent with which such payments are made becomes important." *Id.* (citing *Brittle v. Raybestos–Manhattan, Inc.*, 241 S.C. 255, 258, 127 S.E.2d 884, 885 (1962)).

The payments Corbin received were from a compensation plan which was set up internally at Kohler. The intent of the plan was not connected to Workers' Compensation benefits.

Rather, it was a benefit Kohler provided to certain employees who became disabled. We find no evidence in the record that the payments were made with reference to liability under the Workers' Compensation Act or in lieu of compensation. We rule Kohler was not entitled to a credit for the payments.

## *CONCLUSION*

Accordingly, based on the foregoing reasons, the decision of the Circuit Court is

**AFFIRMED.**

CONNOR and STILWELL, JJ., concur.