2504

John MOATES and Peggy Moates, Respondents v. Jason BOBB, Appellant.
(470 S.E. (2d) 402)

Court of Appeals

*Charles E. Carpenter, Jr.* and *Deborah Harrison Sheffield,* both of *Richardson, Plowden, Grier & Howser, P.A.,* Columbia, *for appellant.*

*Jeffrey S.Holcombe,* of *Suggs & Kelly,* Columbia, *for respondents.*

Submitted Apr. 1, 1996.

Decided Apr. 29, 1996.

GOOLSBY, Judge:

John Moates and Peggy Moates brought this negligence action against Jason Bobb for damages sustained by John Moates as a result of an automobile accident. The trial court found Bobb was equitably estopped from asserting the statute of limitations as a bar to the Moateses' claim. We reverse.[1]

On April 6, 1990, John Moates and Bobb were involved in an automobile accident in which John suffered serious personal injuries rendering him a paraplegic. At the time of the accident Bobb was driving the automobile in which John was a passenger. The automobile driven by Bobb was insured under a commercial policy with St. Paul Fire and Marine Insurance Company with a limit of $500,000. On April 20, 1990, Peggy Moates, John's mother, retained attorney John S. Huggins to represent her son in all claims relating to the accident, including those against St. Paul. Huggins promptly informed Terry Coston, St. Paul's claims adjuster assigned to the claim, of his representation in the matter.

In August, 190, Huggins requested St. Paul forward $24,225 to the Moateses so they could purchase a "barrier free" home for John. St. Paul sent a check for the requested amount with a letter dated August 9, 1990, that stated the check "represent[ed] an advance towards the settlement" of the claim. The letter also informed Huggins there was a $500,000 limit on the policy.

Over the next two years, Huggins and St. Paul, through Coston and her supervisor Edward Barefoot, communicated may times. Through telephone calls and letters, St. Paul continually requested information so the parties could "settle" the case.

Huggins ignored St. Paul's requests for information. The letters from St. Paul commented on Huggins's lack of response to St. Paul's request for information regarding John's medical bills and condition. In fact, on February 28, 1992, Barefoot and Coston met with Huggins personally to encourage him to cooperate with them so they could resolve the matter. Barefoot testified Huggins asked at the meeting if St. Paul would concede the policy limits and Barefoot declined to do so, at least until St. Paul received the information it re-

---

[1] Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument.

quested. On October 13, 1992, Barefoot sent a letter to Huggins confirming St. Paul's frustration over Huggins's lack of cooperation and asking him to forward any information to Coston. On April 6, 1993, the statute of limitations ran on the Moateses' claim. Shortly thereafter, Coston telephoned Huggins and told him St. Paul was closing its file on the claim.

On May 19, 1993, the Moateses filed suit against Bobb seeking damages for injuries arising out of the April 6, 1990, automobile accident. Bobb pled the statute of limitations as a bar to the action. After a hearing in which it was stipulated that the statute of limitations had expired as the Moateses' claim, the trial court held Bobb was equitably estopped from asserting the statute of limitations as a defense. The trial court based its decision on St. Paul's $24,225 "advance towards settlement," which it found constituted an admission of liability, and on St. Paul's repeated references to "settlement" in its correspondence with Huggins.

The sole issue before the trial court was whether Bobb should have been equitably estopped from asserting the statute of limitations as a defense to the Moateses' action. In reviewing the trial court's decision, this court may make findings of fact according to its own view of the preponderance of the evidence. *Doe v. Clark*, 318 S.C. 274, 457 S.E. (2d) 336 (1995) (in an appeal from an equity action tried by a judge alone, an appellate court has jurisdiction to find facts according to its own view of the preponderance of the evidence); *Atlantic & C. Air Line Ry. Co. v. Victor Mfg. Co.*, 79 S.C. 266, 60 S.E. 675 (1908) (the defense of estoppel is equitable in nature).

A defendant may be estopped from claiming a statute of limitations defense if the defendant's conduct has induced the delay that otherwise would give operation to the statute. *Vines v. Self Memorial Hosp.*, 314 S.C. 305, 443 S.E. (2d) 909 (1994). This conduct may be either an express representation that the claim will be settled without litigation or actions suggesting a lawsuit is unnecessary. *Id.* Settlement negotiations commenced but not finalized, however, will not bar a defendant's assertion of the statute of limitations. *Gadsden v. Southern R.R.*, 262 S.C. 590, 206 S.E. (2d) 882 (1974).

A review of the record in this case shows Huggins did not even *begin* settlement negotiations, let alone finalize them. Al-

though the letters from St. Paul to Huggins refer to the goal of "settlement" of the case, the clear purpose of the letters was to ask Huggins to forward essential medical information to St. Paul so the parties could "get moving toward the settlement" of the case.

Huggins admitted he never made a demand on St. Paul for a specific amount of money and St. Paul never offered a specific amount of money to settle the case. Huggins also admitted he never changed his position based on anything St. Paul told him. In fact, the parties never discussed the applicable statute of limitations.

Statute of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system. 54 C.J.S. *Limitations of Actions* § 2, at 16-17 (1989). Statutes of limitations embody important public policy considerations in that they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs. 51 Am. Jur. (2d), *Limitation of Actions* § 18, at 603 (1970). One purpose of a statute of limitations is "to relieve the courts 'of the burden of trying stale claims when a plaintiff has slept on his rights.' " *McKinney v. CSX Transp., Inc.*, 298 S.C. 47, 49-50, 378 S.E. (2d) 69, 70 (Ct. App. 1989) (quoting *Burnett v. New York Cent. R.R.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed. (2d) 941, 945 (1965)). Another purpose of a statute of limitations is to protect potential defendants from protracted fear of litigation. 51 Am. Jur. (2d) *Limitation of Actions* § 17, at 602-03 (1970).

We sympathize with the Moateses as they have suffered a terrible tragedy. As a reviewing court in an equity matter, however, we hold it would be highly unfair to expose Bobb now to the immense potential liability of this claim after the Moateses "slept on their rights." Neither Bobb nor St. Paul did anything to lull the Moateses into believing they would not have to litigate their claim.[2]

Reversed.

CURETON and ANDERSON, JJ., concur.

---

[2] Even if we agreed with the trial court that the $24,225 advance constituted an admission of liability, the parties never negotiated the essential issue of damages, particularly the amount of damages.