682 S.E.2d 1

Gladys KELLY, Appellant,

v.

LOGAN, JOLLEY, & SMITH, L.L.P., James D. Jolley,
Jr., Luther McDaniel, and David Sumner, jointly
and severally, Defendants,

of whom Logan, Jolley, & Smith, L.L.P., James D. Jolley,
Jr., and David Sumner are, Respondents.

No. 4547.

Court of Appeals of South Carolina.

Heard March 18, 2009.

Decided May 18, 2009.

Gloria Y. Leevy, of Greenville, for Appellant.

Samuel W. Outten, William J. Watkins, and Michael J. Bogle, of Greenville and Susan Taylor Wall and Kristina Y. Cook, of Charleston, for Respondents.

GEATHERS, J.:

This legal malpractice matter comes before this Court after the circuit court granted summary judgment in favor of the law firm of Logan, Jolley, & Smith, LLP, James Jolley, Jr., and David Sumner (collectively Respondents) based on the expiration of the statute of limitations. On appeal, Gladys Kelly (Kelly) argues that she timely discovered her cause of

action for legal malpractice less than three years prior to the filing of her complaint against Respondents. Alternatively, Kelly contends that Respondents should be equitably estopped from asserting the statute of limitations as a bar to her legal malpractice claims. We affirm.

## FACTS

On May 1, 1997, Kelly gave birth to a son, Watavious Barker (Watavious). At birth, Watavious suffered severe and permanent injuries, including irreversible brain damage, due to certain improper delivery procedures employed by his health care providers. Watavious spent the first two years of his life in the hospital and was then placed with a foster family who currently cares for him. Neither Kelly nor Watavious' natural father, Wiley Barker (Barker), have made significant efforts since his birth to financially support, care for, or obtain custody of Watavious.

In 1999, Kelly contacted Luther McDaniel (McDaniel), a Georgia attorney, to pursue an action on Watavious' behalf. McDaniel associated James Jolley, Jr., and David Sumner as South Carolina counsel. On April 12, 1999, Respondents filed a medical malpractice suit against the hospital, the delivering doctors, and the doctors' practice. Respondents sought damages for Barker in his individual capacity as well as in his capacity as natural father and guardian ad litem for Watavious. Kelly was not named as an individual party-plaintiff. On April 19, 1999, a week after Respondents filed the medical malpractice action, Kelly signed a letter drafted by McDaniel, in which she stated, "I do not wish to participate in the lawsuit as a party to the action.... I do not believe the chances of success in the case for my son will be improved by joining the lawsuit as a separate party-plaintiff."

On August 8, 2000, Respondents filed a motion to substitute Kelly for Barker as Watavious' guardian ad litem. The circuit court granted this motion on January 3, 2001. On that date, the circuit court also denied Respondents' request to amend the complaint to include Kelly as an individual party-plaintiff in the medical malpractice action. In so doing, the court specifically stated, "Gladys Kelly [is] *not* an individual party-plaintiff." (emphasis in original). By this time, the statute of

limitations on any of Kelly's potential medical malpractice claims had expired. On March 1, 2001, the claims against the hospital were settled for $450,000. Both Kelly and Barker received $7,500 of this settlement. The caption on the settlement indicated that Kelly was representing Watavious' interests as his natural mother and guardian ad litem but not as an individual party-plaintiff.

Subsequently, on October 1, 2002, Jolley and Sumner moved to be relieved as counsel in the remaining medical malpractice case against the doctors and their practice based upon a conflict of interest, which was not divulged in open court due to its confidential nature stemming from the attorney-client relationship. Kelly and Barker were present at this hearing. The court specifically questioned Kelly on whether anyone had coerced, forced, or threatened her into consenting to relieve Respondents, and Kelly replied, "No, sir." In addition, Kelly testified under oath that she understood the basis for Respondents' motion and that she agreed with their decision to be relieved. In its November 12, 2002 order granting Respondents' motion, the circuit court stated that Respondents "ha[d] done everything necessary to adequately protect the legal interests of [Barker, Kelly, and Watavious] in this matter."

After the settlement against the hospital, Watavious' foster parents petitioned the family court on May 20, 2002, to terminate Kelly and Barker's parental rights and to adopt Watavious. The family court continued the matter based on its inability to determine how the child came into the foster parents' care as well as whether the Department of Social Services ever had custody of Watavious. Then, on December 12, 2002, Watavious' foster parents moved to terminate Kelly as Watavious' guardian ad litem and to substitute themselves as party-plaintiffs in Watavious' medical malpractice suit. Kelly was in attendance at the January 9, 2003 hearing on this motion. The court reiterated at the outset that Respondents had been relieved of all obligations to represent Kelly in the remaining medical malpractice suit pursuant to its November 2002 order. In granting the foster parents' motion, the court also terminated Luther McDaniel's authorization to practice law pro hac vice in South Carolina for purposes of the medical malpractice case due to his repeated failure to respond to court requests as well as his failure to appear at the hearing.

At the hearing and later in the court's order, the court made repeated serious admonitions to Kelly to obtain counsel immediately, and it granted Kelly a thirty-day stay of all legal proceedings to find substitute counsel. A copy of the court's January 29, 2003 order was mailed to Kelly by certified mail on February 8, 2003.

On September 17, 2003, the circuit court dismissed Kelly as mother and natural guardian from the medical malpractice action against the remaining defendant doctor and his practice. Shortly thereafter, the medical malpractice claims against the delivering doctor and his practice were settled for $350,000. Kelly did not receive any proceeds from this settlement.

Almost three years later, Kelly filed the instant legal malpractice suit against Respondents on September 11, 2006. Kelly alleged in her complaint that she retained Respondents to represent her individual interests in the medical malpractice suits and that they failed to sue on her behalf for alleged personal injuries suffered during Watavious' birth. Respondents then filed a motion for summary judgment, claiming the three-year statute of limitations had expired on Kelly's claim for legal malpractice. On March 27, 2007, the circuit court granted summary judgment in favor of Respondents. The circuit court held that Kelly was on inquiry notice, if not actual notice, that a cause of action might exist against Respondents on at least five instances between April 12, 1999, and January 29, 2003; thus, Kelly failed to timely file her complaint within the three-year statute of limitations. This appeal followed.

## STANDARD OF REVIEW

Upon review of the circuit court's grant of summary judgment, the appellate court applies the same standard applied by the circuit court pursuant to Rule 56(c), SCRCP. *George v. Fabri*, 345 S.C. 440, 451, 548 S.E.2d 868, 873 (2001). The circuit court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208,

217, 578 S.E.2d 329, 334(2003). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003).

## LAW/ANALYSIS

### I. Running of the Statute of Limitations

Kelly argues the circuit court erred in granting Respondents' motion for summary judgment based on the expiration of the statute of limitations. We disagree.

Statutes of limitations are not simply technicalities. *Moates v. Bobb*, 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct.App.1996). On the contrary, they have long been respected as fundamental to a well-ordered judicial system. *Hooper v. Ebenezer Senior Serv. & Rehab., Ctr.*, 377 S.C. 217, 227, 659 S.E.2d 213, 218 (Ct.App.2008). Statutes of limitations embody important public policy concerns as they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs. *Moates*, 322 S.C. at 172, 470 S.E.2d at 404. One purpose of a statute of limitations is "to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his [or her] rights." *McKinney v. CSX Transp., Inc.*, 298 S.C. 47, 49–50, 378 S.E.2d 69, 70 (Ct.App.1989) (internal quotations and citations omitted). Another purpose of a statute of limitations is to protect potential defendants from protracted fear of litigation. *Pelzer v. State*, 378 S.C. 516, 520, 662 S.E.2d 618, 620 (Ct.App.2008) (internal citation omitted). "Statutes of limitations are, indeed, fundamental to our judicial system." *Hooper*, 377 S.C. at 228, 659 S.E.2d at 219 (internal citation omitted).

The statute of limitations for a legal malpractice action is three years. S.C.Code Ann. § 15–3–530(5) (2005) (stating the statute of limitations for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law" is three years); *see also Berry v. McLeod*, 328 S.C. 435, 444–45, 492 S.E.2d 794, 799 (Ct.App.1997) (finding § 15–3–530(5) provides a three-year statute of limitations for legal malpractice actions). Pursuant

to the discovery rule, the limitations period commences when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist. *Burgess v. Am. Cancer Soc'y. S.C. Div., Inc.*, 300 S.C. 182, 186, 386 S.E.2d 798, 800 (Ct.App.1989); *see also* S.C.Code Ann. § 15–3–535 (2005) ("[A]ll actions initiated under Section 15–3–530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action.").

Under section 15–3–535, the statute of limitations is triggered not merely by knowledge of an injury but by knowledge of diligently acquired facts sufficient to put an injured person on notice of the existence of a cause of action against another. *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005). The standard as to when the limitations period begins to run is objective rather than subjective. *Burgess*, 300 S.C. at 186, 386 S.E.2d at 800. Furthermore, "[t]he statute is not delayed until the injured party seeks advice of counsel or develops a full-blown theory of recovery; instead, reasonable diligence requires a plaintiff to 'act with some promptness.'" *Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct.App.1998) (internal citations omitted).

In the instant matter, Kelly claims there is no evidence in the record to show that she should have been aware of any potential claims against Respondents prior to September 17, 2003, when the circuit court dismissed her as a party from the remaining medical malpractice action.[1] However, the record demonstrates otherwise. As recited in the circuit court's order, there were at least five instances over a course of almost four years, beginning with the filing of the medical malpractice complaint on April 12, 1999, and ending with the court's

---

1. Kelly references September 15, 2003, as the trigger date in her brief, but because her dismissal was not final until the circuit court filed the order dismissing her as a party from the medical malpractice suit, September 17, 2003, is the proper date for her dismissal. *See Ford v. State Ethics Comm'n*, 344 s.C. 642, 646, 344 S.C. 642, 545 S.E.2d 821, 823 (2001) ("The written order is the trial judge's final order and as such constitutes the final judgment of the court. The final written order contains the binding instructions which are to be followed by the parties.") (citing Rule 58, SCRCP).

January 29, 2003 order to relieve Respondents as counsel in the medical malpractice suit, when Kelly was on constructive notice, if not actual notice, that a cause of action might exist against Respondents.

Initially, we note that Kelly was not named as an individual party-plaintiff in the medical malpractice complaint filed against the hospital on April 12, 1999. Kelly had the ability and opportunity to examine the complaint, and her failure to do so did not prevent the statute from beginning to run. *Berry,* 328 S.C. at 445, 492 S.E.2d at 799–800 ("An individual on inquiry or constructive notice is held to be on notice of the contents of documents filed in conformity with applicable statutory law, which an inquiry would have revealed. The statute of limitations begins to run at the time the individual has constructive or inquiry notice.").

Further, on April 19, 1999, one week after the filing of the complaint, Kelly agreed to sign a letter that stated, "I do not wish to participate in the lawsuit as a party to the action.... I do not believe the chances of success in the case for my son will be improved by joining the lawsuit as a separate party-plaintiff." At no time has Kelly presented any evidence to indicate she was incompetent at that time, nor has she shown that Respondents coerced, forced, or threatened her into signing the letter. *See Floyd v. Nationwide Mut. Ins. Co.,* 367 S.C. 253, 263, 626 S.E.2d 6, 12 (2005) (stating that a competent person generally is presumed to have knowledge and understanding of a document he or she signs, absent evidence the signature was obtained by misrepresentation, fraud, forgery, or duress).

Kelly argues that because she had no legal training or advice from another lawyer, she could not know the legal import of the complaint's caption or the significance of the letter she signed, but this is not the appropriate standard by which her conduct must be measured. *See Maher,* 331 S.C. at 377, 500 S.E.2d at 207 ("The statute is not delayed until the injured party seeks advice of counsel or develops a full-blown theory of recovery...."). We recognize that a client should be able to rely on an attorney's advice and be able to follow this advice without fear the attorney is not acting in the client's best interest. *True v. Monteith,* 327 S.C. 116, 120, 489

S.E.2d 615, 617 (1997). However, regardless of the purpose or legal strategy behind signing the April 1999 letter, the letter's terms are not so complex that it would prevent a person of common knowledge and experience from understanding its meaning. From an objective viewpoint, the complaint and letter were sufficient to put Kelly on notice that she was not being represented in the medical malpractice suits for any personal injuries that may have resulted to her from the birth of her son, Watavious. Simply put, we believe a person of common knowledge would be on constructive notice that some right had been invaded at the time of signing a letter to relinquish all personal rights to recovery, particularly if the individual is claiming to have suffered cognizable personal injuries. *See Epstein,* 363 S.C. at 376, 610 S.E.2d at 818 (stating that the exercise of reasonable diligence means an injured party must act with some promptness when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right has been invaded or some claim against another party might exist).

However, even if these two events were insufficient to trigger the statute of limitations, Kelly had a third opportunity to discover a potential cause of action against Respondents. In its order dated January 3, 2001, the circuit court placed Kelly on actual notice that she was not an individual party-plaintiff to the underlying medical malpractice action. During the hearing to substitute Kelly as Watavious' guardian ad litem, Respondents requested that the circuit court amend the medical malpractice complaint to add Kelly as a plaintiff in her individual capacity. The court denied the request and explicitly stated that Kelly was not an individual party-plaintiff in its order. Despite Kelly's claim that as a layperson, she requires the assistance of a lawyer to understand the legal significance of "individual party-plaintiff," the test is not whether she understood the full import of the term, but whether she was presented with *any* existing facts or circumstances to indicate that Respondents were not asserting any claims in the medical malpractice suit for Kelly in her individual capacity. *See Knox v. Greenville Hosp. Sys.,* 362 S.C. 566, 570–71, 608 S.E.2d 459, 462 (Ct.App.2005) ("[The fact that the injured party does not comprehend the full extent of his injuries is

immaterial."]). The January 3, 2001 order clearly presented Kelly with these facts.

Moreover, Kelly was also present at the hearing to relieve Respondents as counsel on October 21, 2002, and the circuit court directly instructed Kelly to find substitute counsel within thirty days because Respondents no longer had any continuing duties or obligations to Kelly. At that hearing, the court engaged in an extensive dialogue with Kelly regarding her understanding of the proceeding, her desire to relieve Respondents as counsel, and whether anyone or anything improperly influenced her decision. Kelly's responses indicated that she fully understood Respondents would no longer be representing her in the medical malpractice action or pursuing any claims, individual or otherwise, on her behalf.

Respondent Jolley's November 18, 2002 letter to Kelly, which included the case caption, reemphasized that Respondents were no longer responsible for Kelly's representation on any of her medical malpractice claims as Jolley stated, "I cannot emphasize strongly enough the need for you to get in touch with Luther [McDaniel] or your new South Carolina counsel immediately. I will maintain a copy of your file in my office and you or your new lawyer may have copies of anything at any time." Despite receiving this letter and the court's admonition to find substitute counsel, Kelly did not hire a new attorney until almost one year later. While Kelly claims that she was ignorant of the facts to prove she had a claim against Respondents at that time, her failure to have developed a full-blown theory of recovery or to seek other counsel is not enough to prevent the statute of limitations from running, particularly when those facts and circumstances could have been known to Kelly through the exercise of ordinary care and reasonable diligence. *See Epstein* 363 S.C. at 376, 610 S.E.2d at 818 (stating that it is not when a party seeks the advice of counsel or develops a full-blown theory of recovery that the statute of limitations begins to run); *Burgess.* 300 S.C. at 185, 386 S.E.2d at 799 ("A party cannot escape the application of this rule by claiming ignorance of existing facts and circumstances, because the law also provides that if such facts and circumstances *could have been known* to the party through the exercise of ordinary care and reasonable diligence, the same result follows.") (emphasis in original).

Viewing the facts in the light most favorable to Kelly, she should have known by January 29, 2003, that she was not being represented in her individual capacity in the medical malpractice suit. On that date, the circuit court terminated her status as Watavious' guardian ad litem and confirmed that Kelly would only be able to proceed as the natural parent of Watavious, not as an individual party-plaintiff. Again, Kelly received actual notice of her status in the medical malpractice suit at this time as she was present at that hearing and received a copy of the order by certified mail.

Kelly's failure to file suit until September 11, 2006, prevents her from maintaining a legal malpractice suit against Respondents. Were we to find the statute of limitations began to run on the latest date, January 29, 2003, she still waited over three years to file suit. The parties do not dispute the material dates involved in this appeal—only *which* date controls for purposes of the statute of limitations. Even assessing the evidence in the light most favorable to Kelly, only one reasonable inference can be drawn from the facts. Because Kelly should have known that she was not an individual party-plaintiff by no later than January 29, 2003, her legal malpractice claims against Respondents are barred by the statute of limitations as a matter of law.

## II. Equitable Estoppel

Kelly alternatively contends that the circuit court erred in granting summary judgment because the doctrine of equitable estoppel prevents Respondents from asserting the statute of limitations as a defense. Kelly also argues in her brief that the statute of limitations should be equitably tolled and that she should benefit from the fraudulent concealment defense to the statute of limitations.[2] We disagree.

---

**2.** Kelly did not specifically make an equitable tolling or fraudulent concealment argument in her Objection to Motion to Dismiss and to Summary Judgment or in her Amended Objection to Summary Judgment. Additionally, the circuit court did not rule on either of these arguments in its order granting summary judgment, and Kelly did not request a reconsideration of the order on those grounds. Her failure to do so precludes review of these issues on appeal. *See Hilton Head Resort v. Resort Inv. Corp.*, 311 S.C. 394, 398, 429 S.E.2d 459, 462 (Ct.App.1993) (holding this court was precluded from addressing an issue on appeal when circuit court did not mention the issue in its order

■ The doctrine of equitable estoppel applies when the statute of limitations has run and the defendant asserts the running of the statute of limitations as a defense. *Hooper,* 377 S.C. at 239, 659 S.E.2d at 225 (citing *Dasha v. Maine Med. Ctr.,* 665 A.2d 993 (Me.1995)). However, the defendant is estopped from benefitting from the statute of limitations as a defense because the defendant has acted in such a manner as to induce the plaintiff to delay in timely filing a cause of action. *Id.* at 239–40, 659 S.E.2d at 225. This conduct may be either an express representation that the claim will be settled without litigation or actions suggesting that a lawsuit is unnecessary. *Moates,* 322 S.C. at 175, 470 S.E.2d at 403.

■ The party asserting equitable estoppel bears the burden of establishing all the elements. *Estes v. Roper Temp. Servs. Inc.,* 304 S.C. 120, 122, 403 S.E.2d 157, 158 (Ct.App. 1991). To establish equitable estoppel, the party claiming estoppel must prove that he or she (1) lacked knowledge and means of obtaining knowledge of the truth of the facts in question; and (2) relied upon the conduct of the party to be estopped. *Ingram v. Kasey's Assocs.,* 340 S.C. 98, 107 n. 2, 531 S.E.2d 287, 292 n. 2 (2000). The party claiming estoppel must also establish that the party to be estopped (1) acted in a way amounting to a false representation or concealment of material facts; (2) intended such conduct to be acted upon by the other party; and (3) possessed knowledge, either actual or constructive, of the true facts. *Id*

■ Kelly fails to establish the first element of equitable estoppel as it pertains to her. She has not adequately demonstrated that she did not know she was not an individual party-plaintiff to the medical malpractice actions and that she had no means of obtaining this knowledge. Kelly had several occasions to examine or investigate her status in the medical malpractice suits. First, Kelly specifically waived her right to pursue a cause of action against the hospital for any personal injuries as a result of Watavious' birth when she signed a letter to this effect on April 19, 1999. Second, Kelly attended the hearing where she was substituted as Watavious' guardian ad litem and was present when the circuit court denied

and appellant made no motion pursuant to Rule 59(e), SCRCP, to require circuit court to do so).

Respondents' request to add her as an individual party-plaintiff to the medical malpractice suit. The court's order reflected this as well in stating: "Gladys Kelly [is] not an individual party plaintiff." Additionally, the caption in the complaint and two subsequent court orders clearly did not mention Kelly as an individual party-plaintiff. *See Berry,* 328 S.C. at 445, 492 S.E.2d at 799 ("An individual on inquiry or constructive notice is held to be on notice of the contents of documents filed in conformity with applicable statutory law, which an inquiry would have revealed."). Kelly's claim that she could not obtain the knowledge to place her on notice because she did not have other legal counsel to help her understand legal documents or proceedings is unconvincing as the statute of limitations is not tolled solely because a party is without counsel or has not fully developed a theory of recovery. *See Maher,* 331 S.C. at 377, 500 S.E.2d at 207.

Kelly also failed to prove the second element of equitable estoppel. The circuit court notified her on more than one occasion that she was not in a position to recover in her individual capacity in the medical malpractice suits; thus, she could not have reasonably relied on any alleged representations by Respondents to the contrary. First, on January 3, 2001, the circuit court issued its order specifically providing that Kelly was not an individual party-plaintiff. Second, when the circuit court relieved Respondents as counsel on November 12, 2002, it stated that Respondents had no continuing duties or obligations to Kelly, which logically includes pursuing any individual claims on her behalf. Last, the circuit court advised Kelly that she was not an individual party-plaintiff in its January 29, 2003 order substituting Watavious' foster parents as individual-party plaintiffs.

Further, for equitable estoppel to apply, a plaintiff must be *aware* that a claim might exist prior to the expiration of the statute of limitations, but due to "some conduct or representation by the defendant," the plaintiff is "induced . . . to delay in filing suit." *Hedgepath v. Am. Tel. & Tel. Co.* 348 S.C. 340, 360, 559 S.E.2d 327, 338 (Ct.App.2001). The inducement to delay in filing suit may come in the form of an express representation by the defendant that a claim will be settled without litigation or by other conduct suggesting a lawsuit is unnecessary. *Id* Kelly emphatically denies that she was

aware of a claim against Respondents for legal malpractice at the time she claims Respondents misrepresented her status in the medical malpractice suits. If she was not aware of a claim against Respondents at that time, she cannot also argue that she reasonably relied on their misrepresentations in delaying to file her legal malpractice suit. Because Kelly failed to establish that she meets the requirements for equitable estoppel, the circuit court properly granted summary judgment based on the expiration of the statute of limitations.

## CONCLUSION

Based on the foregoing, the circuit court's decision is

**AFFIRMED.**[3]

SHORT and THOMAS, JJ., concur.

---

**3.** We decide this case without oral arguments pursuant to Rule 215, SCACR.