719 S.E.2d 265

**Carol M. KIMMER, Personal Representative of the Estate of Richard Kimmer, deceased, Respondent,**

v.

**Philip E. WRIGHT, Appellant.**

No. 4902.

Court of Appeals of South Carolina.

Heard March 23, 2011.

Decided Nov. 2, 2011.

Rehearing Denied Dec. 19, 2011.

54

Warren C. Powell, Jr., of Columbia, for Appellant.

Thomas H. Pope, III, of Newberry, for Respondent.

HUFF, J.

Philip Wright appeals the trial court's order granting partial summary judgment to Carol M. Kimmer, as personal representative of the estate of Richard Kimmer,[1] in which the court held the statute of limitations had not run on Kimmer's legal malpractice action. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

On January 29, 1999, Kimmer was injured in a motor vehicle accident as he was driving to work for his employer, Murata. He hired attorney Philip Wright to represent him. Without notice to Murata, Wright settled Kimmer's claims with the at-fault driver's insurance carrier for his policy limit of $15,000 on June 16, 1999. Kimmer filed a Form 50 on June 18, 1999, and an Amended Form 50 on May 29, 2002, seeking workers' compensation benefits. Murata filed its Form 51 denying Kimmer's claim and asserting as a defense the third party action had been settled without consent. In a meeting at Wright's office, Wright informed Kimmer about his mistake in

---

1. Richard Kimmer passed away March 2, 2008, while this case was pending. For ease of reference, the name "Kimmer" will refer interchangeably to either Richard Kimmer, the personal representative, or to both parties collectively.

settling the third party claim and advised him to get another attorney due to the potential for Kimmer to file a claim against him. Wright followed up this conversation with a letter dated February 1, 2000. On that same date Kimmer signed a waiver of conflict recognizing he might have a right to make a claim against Wright due to his representation in the workers' compensation action but agreeing to let Wright continue to represent him in the personal injury case. Kimmer terminated Wright's representation of him on February 24, 2000.

In an order dated July 31, 2003, the single commissioner found Kimmer's injuries compensable because Murata provided him with a car allowance and mileage. However, the single commissioner denied Kimmer's claim, concluding the settlement of the third party claim, without notice to Murata, constituted an election of remedies and barred the workers' compensation claim. The Appellate Panel affirmed and adopted the order of the single commissioner. In its amended order, the circuit court reversed the order of the Appellate Panel, finding Murata suffered no prejudice as a result of the settlement without notice. It held Kimmer was totally and permanently disabled and was entitled to an award of total and permanent disability, less an offset for the third party settlement. This court reversed the order of the circuit court and reinstated the order of the Appellate Panel. *Kimmer v. Murata of Am.*, 372 S.C. 39, 640 S.E.2d 507 (Ct.App.2006), *cert. denied*, (Oct. 18, 2007).

While the appeal was proceeding in the workers' compensation case, Wright and Kimmer entered into a tolling agreement on October 30, 2003, which provided the time period between the date of the agreement and its termination at no later than November 1, 2004, would not be included in determining a statute of limitations or laches defense. However, the agreement provided it would not be deemed to revive any claim that was already barred on that date. Kimmer brought this action on October 14, 2004. On May 13, 2005, Wright filed an amended answer asserting Kimmer's legal malpractice action was barred by the statute of limitations.

On June 20, 2005, the Honorable S. Jackson Kimball denied Wright's motion for summary judgment on the statute of limitations defense. The judge explained that the adverse

ruling of the Workers' Compensation Commission would be the similar "trigger" event as the adverse jury verdict that triggered the running of the statute of limitations in *Epstein v. Brown,* 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005). The court held, "This Court believes that there is at least an issue of fact in the present case as to when [Kimmer's] awareness of the possibility of an error by [Wright] became sufficient to put him on notice that he actually had an existing legal malpractice claim against [Wright] as opposed to being told merely that he 'may have' a claim. The resolution of that possibility involved legal issues upon which, to this point, the Commission and the Circuit Court disagree." Judge Kimball granted a stay of the legal malpractice action until the appeal of the workers' compensation case was completed.

After the supreme court denied certiorari of this court's decision in the workers' compensation case, both parties moved for summary judgment in the legal malpractice action. The motions were heard before the Honorable John C. Hayes. While Judge Hayes noted the facts suggested Kimmer had notice of a potential claim before the Commission's adverse decision, he held he was bound by Judge Kimball's determination that the statute of limitations was triggered by the Commission's order denying benefits. This appeal followed.

## LAW/ANALYSIS

### A. Law of the Case

Wright argues Judge Hayes erred in holding Judge Kimball's order was the law of the case. Kimmer conceded this issue in his brief. "A denial of summary judgment does not establish the law of the case and is not directly appealable." *In re Rabens,* 386 S.C. 469, 473, 688 S.E.2d 602, 604 (Ct.App. 2010). Accordingly, we find Judge Hayes erred in this ruling.

### B. Statute of Limitations

Wright argues the trial court erred in holding as a matter of law the statute of limitations had not run on Kimmer's malpractice claim. We agree.

The statute of limitations for a legal malpractice action is three years. S.C.Code Ann. § 15–3–530(5) (2005) (stating

the statute of limitations for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law" is three years); *see also Berry v. McLeod,* 328 S.C. 435, 444, 492 S.E.2d 794, 799 (Ct.App.1997) (finding section 15–3–530(5) provides a three-year statute of limitations for legal malpractice actions). The discovery rule applies in this action. *See Kelly v. Logan, Jolley, & Smith, L.L.P.,* 383 S.C. 626, 632–33, 682 S.E.2d 1, 4 (Ct.App.2009) (applying discovery rule in legal malpractice action). Under the discovery rule, "the three-year clock starts ticking on the 'date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct.'" *Martin v. Companion Healthcare Corp.,* 357 S.C. 570, 575–76, 593 S.E.2d 624, 627 (Ct.App.2004) (quoting *Bayle v. S.C. Dep't of Transp.,* 344 S.C. 115, 123, 542 S.E.2d 736, 740 (Ct.App.2001)); *see also* S.C.Code Ann. § 15–3–535 (2005) ("[A]ll actions initiated under Section 15–3–530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."). The supreme court explained reasonable diligence means

> simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party **might** exist. **The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery developed.** Under § 15–3–535, the statute of limitations is triggered not merely by knowledge of an injury but by knowledge of facts, diligently acquired, sufficient to put an injured person on notice of the existence of a cause of action against another.

*Epstein v. Brown,* 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005) (citation omitted).

Kimmer relies on *Epstein* to support her position the statute of limitations in a legal malpractice case does not start to run until an adverse judgment in the underlying action. We find this reliance is misplaced. In *Epstein* the supreme court refused to adopt the continuous representation rule, which

holds the statute of limitations is tolled during the period an attorney continues to represent the client on the same matter out of which the alleged malpractice arose. *Id.* 363 S.C. at 380, 610 S.E.2d at 820. The supreme court similarly rejected Epstein's argument the statute of limitations should not be deemed to have run until the conclusion of the appeal of the underlying action because it was not until that date upon which he suffered "legal damages." *Id.* Instead, the court held the statute of limitations had begun to run by the conclusion of the trial in the underlying action. *Id.* at 382, 610 S.E.2d at 821. The court cautioned:

> We do not hold that, in all instances, the date of a jury's adverse verdict is the date on which the [statute of limitations] begins to run. To the contrary, we hold only that, under the facts of this case, Dr. Epstein knew of a potential claim against Brown by this date, *at the latest.*

*Id.* at 383 n. 8, 610 S.E.2d at 821 n. 8 (emphasis added).

Thus, the court did not establish a bright-line test the statute of limitations cannot begin to run until the jury's adverse verdict, but held, in that particular case, the *latest* it began to run was the conclusion of the trial. *See also Kelly,* 383 S.C. at 637, 682 S.E.2d at 6 (holding statute of limitations on Kelly's legal malpractice action began to run well before Kelly was dismissed from underlying action).

Kimmer asserts the statute of limitations was not triggered until the Commission's adverse ruling because until then he could not have established an injury that was proximately caused by Wright's negligence. He asserts until then there was a possibility the Commission would hold his claim was not compensable because it was not work-related or that the third-party settlement did not bar his claim. These issues could have been litigated in the legal malpractice action if necessary. *See Doe v. Howe,* 367 S.C. 432, 442, 626 S.E.2d 25, 30 (Ct.App.2005) (holding as to damages, the plaintiff must show he most probably would have been successful in the underlying suit if the attorney had not committed the alleged malpractice and the question of the success of the underlying claim, if suit had been brought, is a question of law). In a case cited by *Epstein,* the Indiana Court of Appeals rejected such a contention and held the statute of limitations in a legal

malpractice claim began to run when the attorney informed the clients that he had failed to timely file a medical malpractice claim and not when summary judgment was granted on the declaratory judgment action. *Basinger v. Sullivan*, 540 N.E.2d 91, 93–94 (Ind.Ct.App.1989). The court explained:

> Where legal malpractice is claimed for an attorney's failure to commence an action within the period of limitations it is generally held that one of the necessary ultimate proofs for a recovery of damages is that a recovery would have been had if the suit had been properly brought. Can it then be contended that the limitation period does not commence to run on the attorney's negligence until plaintiff's right to recovery on the original claim has been judicially established? Clearly, the answer is no. To permit such reasoning would for all practical purposes preclude the statute from ever commencing to run.

*Id.* at 93 (citations omitted).

Further, we find Kimmer's assertion does not comply with our precedent. This court held: "[O]nce a reasonable person has reason to believe that some right of his has been invaded or that some claim against another party might exist, the requirement of reasonable diligence to investigate this information further takes precedence over the inability to ascertain the amount of damages or even the possibility that damages may be forthcoming at all." *Binkley v. Burry*, 352 S.C. 286, 297–98, 573 S.E.2d 838, 844–45 (Ct.App.2002) (citation and internal quotation marks omitted).

In Wright's February 1, 2000 letter, Wright explained that the workers' compensation statutes require the claimant to notify the Commission, the employer, and the employer's insurance carrier in the event of a settlement with a third party. He admitted, "I did not give those parties notification, so that may prejudice your right to recover workers' compensation benefits, if, in fact, you were entitled based on the facts of the case to receive those benefits." He informed Kimmer the attorney for Murata denied Kimmer was entitled to workers' compensation benefits because Wright had settled with the third party without providing the required notice. Kimmer signed a Waiver of Conflict dated February 1, 2000, which provided: "I understand that I may have a right to make a

claim against Mr. Wright concerning his representation related to my workers' compensation action."

In his deposition, Kimmer stated that during an office conference some time before February 1, 2000, Wright told him he had "screwed this up" and Kimmer would have to get another attorney to take the workers' compensation case. Kimmer acknowledged he understood from Wright's February 1, 2000 letter the reason he was not receiving workers' compensation benefits was because Wright had made a mistake and Kimmer might have a claim against him. Kimmer admitted beginning in 1999, the failure to receive workers' compensation payments caused him problems. He stated the failure to receive benefits contributed to his having post-traumatic stress disorder and depression problems. A medical report dated October 17, 2000, refers to Kimmer having severe post-traumatic stress syndrome.

Thus, more than three years before he and Wright entered into the tolling agreement, Kimmer was aware Wright had made a significant error in settling the third-party claim without notice, that he was not receiving workers' compensation benefits because of Wright's error, and he was suffering financial and emotional damages due to the error. Accordingly, the trial court erred in holding the statute of limitations did not begin to run until the single commissioner issued her order.

### C. Equitable Tolling

As an additional sustaining ground, Kimmer urges this court to apply the doctrine of equitable tolling. The South Carolina Supreme Court recently adopted this doctrine. *Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.*, 386 S.C. 108, 687 S.E.2d 29 (2009). The court explained the doctrine of equitable tolling may be applied to toll the running of the statute of limitations "to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits." *Id.* at 115, 687 S.E.2d at 32. The court explained:

The equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies so that relief will be granted when, in view of all the circumstances, to deny it would permit one

party to suffer a gross wrong at the hands of the other. Equitable tolling may be applied where it is justified under all the circumstances.

*Id.* at 116–17, 687 S.E.2d at 33 (citation and quotation marks omitted). The court noted the party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use. *Id.* at 115, 687 S.E.2d at 32. It cautioned equitable tolling was a doctrine that should be used sparingly and only when the interests of justice compel its use. *Id.* at 117, 687 S.E.2d at 33.

Kimmer argues the court should apply the doctrine because 1) Wright testified for Kimmer in the workers' compensation hearing; 2) Wright entered into the tolling agreement a year after he contends the statute ran; and 3) Wright did not assert the statute of limitations defense until 2005 when his insurance counsel moved to amend his answer. He asserts he "should not be penalized for pursuing his quasi-judicial rights at the Workers' Compensation Commission."

The tolling agreement specifically provided it would not be deemed to revive any claim that was already barred on that date. Kimmer does not direct this court's attention to any action by Wright that would establish Wright led Kimmer to believe he would not assert the statute of limitations as a defense. Further, Kimmer could have protected his claim against Wright while pursuing his workers' compensation claim. In *Epstein*, the supreme court rejected Epstein's argument that requiring him to pursue an appeal while simultaneously filing a malpractice suit against his attorney would have put him in the awkward position of arguing inconsistent positions in two different courts. *Epstein v. Brown*, 363 S.C. 372, 381–82, 610 S.E.2d 816, 821 (2005). The court noted a plaintiff could take measures to avoid such inconsistent positions such as filing the malpractice action and then seeking a stay of the malpractice agreement during the appeal or entering into a tolling agreement for the malpractice claim for the pendency of the appeal. *Id.* Kimmer could have requested a tolling agreement earlier or brought his malpractice action and requested a stay.

Although we are sympathetic to Kimmer's situation, we are mindful the supreme court cautioned the doctrine of equitable

tolling was to be used sparingly. We find application of the doctrine is not justified under the circumstances of this case.

## CONCLUSION

We find the trial court erred in holding the statute of limitations did not bar Kimmer's legal malpractice action. Accordingly we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

PIEPER, J., concurs.

FEW, C.J., dissenting.

Attorney Philip Wright concedes that a mistake he made in the course of representing Richard Kimmer in a workers' compensation case was a breach of the duty he owed to his client. He thus concedes the first two elements of a legal malpractice claim existed as of the date of the mistake. However, as with many mistakes lawyers make in the course of litigation, no damage resulted from the mistake until the workers' compensation commission denied benefits to Kimmer. At that point, the other two elements which must be present before a cause of action for legal malpractice accrues—causation and damage—came into existence for the first time. Kimmer filed suit against Wright within three years of the date all four elements existed, and thus complied with the statute of limitations. I respectfully dissent.

The statute of limitations requires that legal malpractice actions "be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action." *Berry v. McLeod,* 328 S.C. 435, 444–45, 492 S.E.2d 794, 799 (Ct.App.1997). A legal malpractice cause of action consists of four elements: "(1) the existence of an attorney-client relationship; (2) a breach of duty by the attorney; (3) damage to the client; and (4) proximate cause of the client's damages by the breach." *Rydde v. Morris,* 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009). When any one of these elements is missing, the client does not have a legal malpractice cause of action against the lawyer.

Thus, the statute of limitations does not begin to run until all four elements, including damage, are present.

A lawyer's breach of duty to the client necessarily occurs before the damage resulting from the breach. In other words, damage is always the last element of a legal malpractice claim to occur. Therefore, our courts have described the point at which the statute of limitations begins to run as "where *the facts and circumstances of an injury* would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Mitchell v. Holler*, 311 S.C. 406, 409, 429 S.E.2d 793, 795 (1993) (emphasis added) (internal quotation marks and citation omitted). In *Mitchell*, as in every published decision on the statute of limitations in a legal malpractice case except for one, the prospective plaintiff discovered the injury before learning of the negligent act or omission that caused it. In each of those cases, the court held that the occurrence of the injury put the client on notice to inquire as to whether the injury was caused by the attorney's negligence.[2]

---

2. *See Christensen v. Mikell*, 324 S.C. 70, 73, 476 S.E.2d 692, 694 (1996) (finding statute ran from point when client knew he did not have title insurance); *Mitchell*, 311 S.C. at 409, 429 S.E.2d at 795 (holding knowledge of murder conviction, coupled with complaint about trial counsel's performance, commenced running of statute); *Manios v. Nelson, Mullins, Riley & Scarborough, LLP*, 389 S.C. 126, 145, 697 S.E.2d 644, 654 (Ct.App.2010) (holding there was conflicting evidence on when client should have known deed of trust with priority over client's interest caused damage); *Kelly v. Logan, Jolley, & Smith, LLP*, 383 S.C. 626, 635–36, 682 S.E.2d 1, 6 (Ct.App.2009) (finding statute ran from client's knowledge she had not been named as a plaintiff in medical malpractice action); *Binkley v. Burry*, 352 S.C. 286, 297, 573 S.E.2d 838, 844 (Ct.App.2002) (holding statute ran from date landowners knew their property was encumbered by easement not disclosed at closing); *Peterson v. Richland Cnty.*, 335 S.C. 135, 139, 515 S.E.2d 553, 555 (Ct.App.1999) (holding statute ran from client's knowledge of improperly indexed judgment); *Holy Loch Distribs., Inc. v. Hitchcock*, 332 S.C. 247, 254, 503 S.E.2d 787, 791 (Ct.App.1998) (holding statute began to run when ATF agents notified plaintiffs they were operating their business in violation of federal law due to lack of appropriate permits and licenses), *rev'd on other grounds*, 340 S.C. 20, 531 S.E.2d 282 (2000); *Berry*, 328 S.C. at 445–46, 492 S.E.2d at 800 (holding that where plaintiffs claimed a right to hold referendum on municipal bond, statute began to run when plaintiffs knew bond was issued without a referendum); *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 300 S.C. 182,

Here, the situation is different. Wright made Kimmer aware of the negligence, but Kimmer did not suffer an actionable injury for another three years. The majority has taken language from these prior cases, inapplicable to the facts of this case,[3] and used it to hold that when the client learns of his lawyer's negligence, the statute of limitations begins to run even though he has yet to suffer any injury. I respectfully disagree.

My point is illustrated by *Epstein v. Brown*, 363 S.C. 372, 610 S.E.2d 816 (2005), the one decision in which the factual scenario is similar, although not identical, to this one. Dr. Epstein sued Brown for legal malpractice Brown allegedly committed in the course of defending Dr. Epstein in a medical malpractice lawsuit. 363 S.C. at 374–75, 610 S.E.2d at 817. The medical malpractice lawsuit resulted in a $6,028,535.88 verdict against Dr. Epstein. *Id.* The trial court granted summary judgment to Brown on the basis that Dr. Epstein had not complied with the statute of limitations. 363 S.C. at 375, 610 S.E.2d at 817. The supreme court affirmed, holding "Dr. Epstein clearly knew, or should have known he might have had some claim against Brown at the conclusion of his trial." 363 S.C. at 382, 610 S.E.2d at 821.

I will discuss below my contention that *Epstein* is controlling, and that the statute therefore began to run "at the conclusion of [Kimmer's] trial," the date of the single commissioner's ruling. However, even if *Epstein* is not controlling, the supreme court's holding illustrates an important reality about litigation that requires us to affirm the circuit court: lawyers make mistakes during the course of litigation, and yet if the client wins the case, no damage results from those mistakes. Recognizing this reality is essential to the analysis of a statute of limitations question in a legal malpractice action arising out of litigation because the existence of damage is one of the elements. *Rydde*, 381 S.C. at 646, 675 S.E.2d at 433

---

187, 386 S.E.2d 798, 800 (Ct.App.1989) (holding statute was triggered by client's knowledge of attorney's affair with officer of company client was suing). *But see True v. Monteith*, 327 S.C. 116, 120–21, 489 S.E.2d 615, 617 (1997) (holding although client knew of injury for years, there was a question of fact as to when she should have learned of attorney's conflict of interest in transaction causing the injury).

3. See discussion of *Binkley* below.

(stating the elements of a legal malpractice claim include "damage to the client"). Like Kimmer in this case, Dr. Epstein made allegations of malpractice against Brown arising out of events that occurred long before the trial.[4] However, if the jury found in Dr. Epstein's favor, he would not have suffered damages, and no cause of action would ever have accrued against Brown.

The same is true here. The effect of Wright's negligence on Kimmer's right to recover workers' compensation benefits was not known until at least July 31, 2003, when the single commissioner ruled against Kimmer and denied his claim for benefits. Until then, Kimmer and his lawyers were working hard to win the case, despite Wright's negligence. The damages element was missing because the possibility remained that Kimmer would prevail on the claim. When the single commissioner ruled, however, Kimmer knew Wright's negligence caused him to lose his workers' compensation case. Because damage existed then for the first time, Wright's negligence became actionable malpractice for the first time. Kimmer commenced this action on October 14, 2004, well within the statute of limitations.

The majority's reliance on *Binkley* and the "reasonable diligence" language from *Epstein* is misplaced. In *Binkley*, and in all cases in which the reasonable diligence language is important, the prospective plaintiff was aware of the damage, but was unaware of the attorney's negligent conduct that caused the damage. In *Binkley*, for example, we held the statute of limitations began to run when the plaintiffs knew of the existence of an easement allowing a conservation district to cause flooding on the plaintiffs' property. 352 S.C. at 297, 573 S.E.2d at 844. We held this even though no flooding had

---

4. For example, as the supreme court stated:

> In his complaint, Dr. Epstein alleged Brown was negligent in numerous particulars, including: failing to conduct an adequate investigation, failing to advise Epstein to settle, failing to keep Epstein adequately informed during the pendency of the case, representing multiple defendants with conflicts of interest, ... and adopting a defense which was contrary to Dr. Epstein's medical opinion.

*Epstein*, 363 S.C. at 376, 610 S.E.2d at 818. Several of these allegations arise out of actions Brown took before he even filed an answer. Presumably, for example, Brown made the decision to represent multiple defendants almost as soon as Dr. Epstein's complaint was served.

yet occurred, and the plaintiffs had no idea the defendant law firm had negligently failed to disclose the easement. *Id.* We explained that the mere existence of the easement was sufficient damage to put the plaintiff on inquiry notice. *Id.* ("An easement by its very nature involves the right to encroach upon another's property."). Because the plaintiffs knew of the easement, we held they "had inquiry notice of a possible claim against [the law firm] regarding the easement." *Id.* In *Binkley,* it was knowledge of the existence of damage that caused the statute of limitations to begin to run.

However, the majority relies on the following language from *Binkley:* "the requirement of reasonable diligence to investigate this information further takes precedence over the inability to ascertain the amount of damages *or even the possibility that damages may be forthcoming at all.*" 352 S.C. at 298, 573 S.E.2d at 845 (emphasis added). The majority interprets the emphasized language to support its position that a legal malpractice cause of action can accrue, and thus the statute of limitations begins to run, before any damage has occurred. I respectfully disagree with the majority's interpretation. Rather, the *Binkley* court's previous statement that the mere existence of the easement caused the landowner damage, taken in the context of the case, indicates this emphasized language refers to the insignificance of the fact that no flooding had yet occurred. My point is supported by a footnote at the end of the emphasized language, in which we cited *Dean v. Ruscon Corp.,* 321 S.C. 360, 364, 468 S.E.2d 645, 647 (1996), for the principle "the fact that the injured party may not comprehend the full extent of the damage is immaterial." 352 S.C. at 298 n. 21, 573 S.E.2d at 845 n. 21. These circumstances demonstrate that the language from *Binkley* relied on by the majority does not indicate that a legal malpractice cause of action can accrue before there is damage. Rather, we used the language relied on by the majority to indicate that on those facts, the circumstance that the flooding had not yet occurred did not delay the commencement of the statute of limitations.

The majority also relies on the following language from *Epstein:*

The exercise of reasonable diligence means simply that an injured party must act with some promptness where the

facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party **might** exist.

363 S.C. at 376, 610 S.E.2d at 818. The majority quotes this language, which emphasizes the word "might." Here, the correct language to emphasize is "injured party" and "the facts and circumstances of an injury." The language is used to describe a situation when a known injury "might" have resulted from a lawyer's negligence. The language was never intended to apply to a situation like we have here, where a lawyer's known negligence "might" later result in injury. The same is true in all of our published decisions on the statute of limitations in legal malpractice cases, except *Epstein*. In each case, the prospective plaintiff was aware of the injury, and that awareness put the plaintiff on notice to inquire into whether the injury was caused by the lawyer's negligence.[5]

Wright asserts several additional reasons the statute of limitations began to run earlier than the date of the single commissioner's ruling. First, he argues the "unmistakable" quality of his malpractice caused the statute to begin to run immediately. I disagree. As an initial matter, to condition the commencement of the statute of limitations in a legal malpractice case on the degree of the lawyer's negligence creates an unmanageable standard for courts to apply. Even assuming Wright is correct that his malpractice was unmistakable, how would the court treat malpractice that was barely mistakable, or merely probable? Second, the circuit court's ruling on appeal from the commission establishes that Wright's malpractice was not unmistakable. It would be patently unfair for this court to say Kimmer should have known he would eventually be damaged, and thus had a cause of action against Wright, when a circuit judge made precisely the opposite ruling in the same case. The fact that this court later reversed the circuit judge is not important. The circuit court's ruling established that Kimmer retained a reasonable chance of winning his workers' compensation claim even after Wright's "unmistakable" negligence.

---

5. *See* footnote 2.

Wright also argues the statute of limitations began to run because Kimmer did in fact suffer damage before the single commissioner's ruling due to the carrier's denial of temporary benefits. I disagree. First, this also creates an unmanageable standard. The courts cannot condition the commencement of the statute of limitations on whether a workers' compensation insurance adjuster agrees or refuses to pay temporary benefits. Taken not even to its extreme, Wright's argument provides that a cause of action accrues against a workers' compensation claimant's lawyer any time some minor mistake in the lawyer's office results in even a brief delay in requesting temporary benefits. Second, and more importantly, a claimant who is denied temporary benefits but later prevails at the final hearing is entitled to receive retroactive benefits. *See Langdale v. Harris Carpets,* 395 S.C. 194, 717 S.E.2d 80 (Ct.App.2011) (Shearouse Adv. Sh. No. 24 at 97, 106) (affirming commission's award of temporary benefits after employer denied payment). Thus, Kimmer did not suffer any damage resulting from his interim loss of temporary benefits. Rather, as with any other type of contested workers' compensation benefits, his entitlement to temporary benefits depended on the ultimate decision of the commission. *See Tiller v. Nat'l Health Care Ctr. of Sumter,* 334 S.C. 333, 343, 513 S.E.2d 843, 848 (1999) (affirming commission's award of temporary total benefits).

Finally, and most importantly, the supreme court addressed this question in *Epstein,* and held that in an action based on alleged malpractice during the course of litigation, the statute of limitations begins to run when a lawyer's negligence results in a ruling adverse to the client in a trial. "Dr. Epstein clearly knew, or should have known he might have had some claim against Brown *at the conclusion of his trial." Epstein,* 363 S.C. at 382, 610 S.E.2d at 821 (emphasis added). The comparable point in time in this case, when under *Epstein* the statute of limitations began to run, is the single commissioner's ruling. I believe we are bound to apply *Epstein* to this appeal, and must affirm.

The majority argues, however, that *Epstein* is not controlling, emphasizing a footnote in which the court stated:

We do not hold that, in all instances, the date of a jury's adverse verdict is the date on which the [statute of limita-

tions] begins to run. To the contrary, we hold only that, under the facts of this case, Dr. Epstein knew of a potential claim against Brown by this date, *at the latest.*

363 S.C. at 383 n. 8, 610 S.E.2d at 821 n. 8 (emphasis added). The majority argues the emphasized language "at the latest" means that under some circumstances the statute could begin to run before an adverse decision by a trial court or administrative agency, but could never begin to run afterwards.

However, I believe "at the latest" means the opposite of what the majority contends. In order to understand this point, consider the dissenting opinion filed by the Chief Justice and the unique damages claim made by Dr. Epstein. In her dissent, the Chief Justice argued that no injury occurred, and thus the statute of limitations did not begin to run, until all appeals were exhausted and the remittitur had been sent to the lower court. 363 S.C. at 383, 610 S.E.2d at 822. As to Dr. Epstein's damages claim, he alleged damages to his reputation arising from adverse publicity when the verdict was announced, in addition to economic losses arising from the $6 million judgment against him. *See* 363 S.C. at 376, 382, 610 S.E.2d at 818, 821.

Several paragraphs before the *Epstein* majority's "at the conclusion of his trial" holding, and the "at the latest" language of footnote 8, the majority began discussing the position the Chief Justice took in her dissent as follows:

Dr. Epstein asserts that, even if we do not adopt the continuous representation rule, the statute of limitations should not be deemed to have begun to run until the date on which this Court denied certiorari (January 11, 2001), because it was not until that date upon which he suffered "legal damages." We disagree.

363 S.C. at 380, 610 S.E.2d at 820. The *Epstein* majority then gave several reasons it disagreed. First, the court cited a number of decisions from other jurisdictions which "tend to hold that a plaintiff may institute a malpractice action prior to the conclusion of the appeal." 363 S.C. at 380–81, 610 S.E.2d at 820–21. Second, the court refuted the argument "that requiring [a plaintiff] to pursue an appeal while simultaneously filing a malpractice suit against his attorney puts him in the

awkward position of arguing inconsistent positions in two different courts." 363 S.C. at 381–82, 610 S.E.2d at 821.

Then the *Epstein* majority cited the "discovery rule," and noted "[t]he fact that the injured party may not comprehend the full extent of the damage is immaterial." 363 S.C. at 382, 610 S.E.2d at 821. Applying the discovery rule "[u]nder the facts of this case," the *Epstein* majority pointed out: "The damages [Dr. Epstein] claims are largely those to his reputation." *Id.* After discussing what Dr. Epstein knew before the trial and during the course of the appeal about his lawyer's performance, the court concluded: "It is patent Dr. Epstein knew, or should have known, of a possible claim against Brown long before this Court denied certiorari in January 2001." 363 S.C. at 383, 610 S.E.2d at 821. Footnote 8 is found at the end of the next sentence.

I believe the purpose of footnote 8 and the "at the latest" statement is to demonstrate that the Chief Justice's argument would not change the outcome of *Epstein* because of the allegation of injury to reputation. In other words, the purpose of footnote 8 is to explain that even if an appellate court had reversed the verdict, thereby eliminating the economic portion of Dr. Epstein's damages claim, the alleged injury to his reputation was at least partially irreversible and would have remained. In that situation, regardless of what the appellate court did to reverse his economic injury, Dr. Epstein suffered injury to his reputation as of the date of the jury verdict. Therefore, the court stated "under the facts of this case, Dr. Epstein knew of a potential claim against Brown by [the date of the jury's verdict], at the latest." 363 S.C. at 383 n. 8, 610 S.E.2d at 821 n. 8.

Under this reading, the *Epstein* majority did not intend the "at the latest" statement to indicate that the statute might have started to run before the verdict. Rather, the statement is part of the majority's response to the argument that the statute begins to run after the appeals have been exhausted, and specifically recognizes that the unique allegation of damage to Dr. Epstein's reputation makes that argument inapplicable to the facts of that case. Thus, the majority's reason for distinguishing *Epstein* is unfounded, and we are left with no basis on which to conclude that the supreme court did not mean what it said when it chose these words: "Dr. Epstein

clearly knew, or should have known he might have had some claim against Brown at the conclusion of his trial." 363 S.C. at 382, 610 S.E.2d at 821. *Epstein* therefore controls the outcome of this case: the statute of limitations did not run on Kimmer's claim.

The practice of law is an imperfect art in which lawyers necessarily take risks and make mistakes. However, when a litigator makes a mistake—indeed commits malpractice, such as Wright did in this case—nobody knows whether the mistake will cause damage until the damage materializes in the form of an adverse judgment. For this reason, the statute of limitations did not begin to run on Kimmer's claim against Wright until July 31, 2003, when the single commissioner denied workers' compensation benefits. Kimmer filed suit on October 14, 2004. Because he commenced his action against Wright within the three-year statute of limitations, the circuit court correctly granted partial summary judgment to Kimmer.

I would affirm.